JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Cheryl R. Borowski, Esq.

**DEFENDANTS** Kean University; Dawood Farahi, Ph.D.; Charles Williams, Ph.D.; Steven Kubow; Kenneth Green, Esq.; Faraque Chowdhury; Christopher Myers

**(b)** County of Residence of First Listed Plaintiff  Ocean
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kevin Haverty, Esq,. Williams Cedar LLC, 8 Kings Hwy W., Ste. B., Haddonfield, NJ  08033

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❑ 1  U.S. Government
Plaintiff
- ☒ 3  Federal Question
*(U.S. Government Not a Party)*
- ❑ 2  U.S. Government
Defendant
- ❑ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - | ❑ 690 Other | ❑ 423 Withdrawal 28 USC 157 | ❑ 376 Qui Tam (31 USC 3729(a)) |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Product Liability | | | ❑ 400 State Reapportionment |
| ❑ 140 Negotiable Instrument | Liability | ❑ 367 Health Care/ | | **PROPERTY RIGHTS** | ❑ 410 Antitrust |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Pharmaceutical | | ❑ 820 Copyrights | ❑ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ❑ 830 Patent | ❑ 450 Commerce |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Product Liability | | ❑ 835 Patent - Abbreviated New Drug Application | ❑ 460 Deportation |
| ❑ 152 Recovery of Defaulted | Liability | ❑ 368 Asbestos Personal | | ❑ 840 Trademark | ❑ 470 Racketeer Influenced and |
| Student Loans | ❑ 340 Marine | Injury Product | | | Corrupt Organizations |
| (Excludes Veterans) | ❑ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ❑ 480 Consumer Credit |
| ❑ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ❑ 861 HIA (1395ff) | ❑ 490 Cable/Sat TV |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 370 Other Fraud | ❑ 710 Fair Labor Standards | ❑ 862 Black Lung (923) | ❑ 850 Securities/Commodities/ |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | ❑ 371 Truth in Lending | Act | ❑ 863 DIWC/DIWW (405(g)) | Exchange |
| ❑ 190 Other Contract | Product Liability | ❑ 380 Other Personal | ❑ 720 Labor/Management | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Property Damage | Relations | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| ❑ 196 Franchise | Injury | ❑ 385 Property Damage | ❑ 740 Railway Labor Act | | ❑ 893 Environmental Matters |
| | ❑ 362 Personal Injury - | Product Liability | ❑ 751 Family and Medical | | ❑ 895 Freedom of Information |
| | Medical Malpractice | | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❑ 896 Arbitration |
| ❑ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ❑ 791 Employee Retirement | ❑ 870 Taxes (U.S. Plaintiff | ❑ 899 Administrative Procedure |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate | | ❑ 871 IRS—Third Party | Agency Decision |
| ❑ 240 Torts to Land | ❑ 443 Housing/ | Sentence | | 26 USC 7609 | ❑ 950 Constitutionality of |
| ❑ 245 Tort Product Liability | Accommodations | ❑ 530 General | | | State Statutes |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❑ 462 Naturalization Application | | |
| | ❑ 446 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 465 Other Immigration | | |
| | Other | ❑ 550 Civil Rights | Actions | | |
| | ❑ 448 Education | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❑ 2 Removed from State Court
- ❑ 3 Remanded from Appellate Court
- ❑ 4 Reinstated or Reopened
- ❑ 5 Transferred from Another District *(specify)*
- ❑ 6 Multidistrict Litigation - Transfer
- ❑ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. sections 1983 and 1988

Brief description of cause:
Violation of civil rights under the 1st and 14th amendments and 42 U.S.C. sections 1983 and 1988

## VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ❑ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Hon. William J. Martini, U.S.D.J.        DOCKET NUMBER  2:19-cv-20413

DATE
4/27/2020

SIGNATURE OF ATTORNEY OF RECORD
*Kevin Haverty, Esq.*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHERYL BOROWSKI, ESQ. | : |
| Plaintiff | : |
| v. | :    Civil Action No.: |
| KEAN UNIVERSITY; | : |
| DAWOOD FARAHI, Ph.D., | |
| in his official and individual capacities; | : |
| CHARLES WILLIAMS, Ph.D., | |
| in his official and individual capacities; | : |
| STEPHEN KUBOW, | |
| in his official and individual capacities; | : |
| KENNETH GREEN, Esq., | |
| in his official and individual capacities; | : |
| FARUQUE CHOWDHURY, , | |
| in his official and individual capacities; | : |
| CHRISTOPHER MYERS, | |
| in his official and individual capacities, | : |
| Defendants | : |

**COMPLAINT AND JURY DEMAND**

**NOW COMES** Cheryl R. Borowski, former Adjunct Professor at Kean University, a public University of the State of New Jersey, pursuant to the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, seeking declaratory and injunctive relief, and compensatory and punitive damages against the named Defendants, and states:

**INTRODUCTION**

This lawsuit involves the violation of the constitutional rights of Cheryl Borowski, a former Adjunct Professor at Kean University ("Kean" or "University"), a public university of the State of New Jersey. Borowski is a licensed attorney in New Jersey and had been employed as an Adjunct Professor by Kean to teach a course in business law to undergraduate students enrolled

at Kean. She had been teaching the course every year for 5 years when, in 2016, Borowski was accused of violating the New Jersey Policy Prohibiting Discrimination In The Workplace ("Policy"). It was alleged that Borowski had made inappropriate remarks relating to gender, religion, national origin and ethnicity while teaching in her class. She was abruptly removed from the class on March 29, 2016, while she was in the process of teaching and was never allowed to return. Although the University continued to pay Borowski her salary for the remainder of the term, her contract was not renewed for the 2016-2017 school year.

The Policy is facially unconstitutional because it is not content or viewpoint neutral, and is defectively vague and overbroad. Since the Policy is unconstitutional, Borowski could not be disciplined for allegedly violating an unconstitutional policy and any adverse employment action taken against her was unconstitutional.

Borowski appealed her termination on the alleged basis that she had violated the Policy to the New Jersey Civil Service Commission ("Commission"). Due to continuances which were requested by the University, a hearing in Borowski's appeal did not commence until June 14, 2018. After the hearing was concluded following three days of testimony before an Administrative Law Judge, and the parties were in the process of preparing their final briefs, New Jersey Attorney General Gurbir Grewal sent a letter, written by then Deputy Attorney General Marolhin Mendez, to the ALJ directing her to dismiss the appeal, on the basis that Christopher Myers, Director of the Commission, had informed the Attorney General that the Commission did not have jurisdiction to hear appeals by Professors or Adjunct Professors employed by public universities in New Jersey, because they were not covered by Title 11A, the New Jersey Civil Service Act. The ALJ accordingly dismissed the appeal. The dismissal was affirmed on appeal to the Commission.

Myers' position that the Commission did not have jurisdiction to hear Borowski's appeal was contrary to the plain, unambiguous language of the appellate procedure regulations contained in the Policy, and also violated the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

By imposing an adverse employment action on Borowski based on alleged violations of the unconstitutional Policy, the University violated Borowski's right to free speech under the 1st Amendment. It has also violated her liberty interest under the 14th Amendment by removing her from her class and terminating her contract without affording her procedural due process. The Commission has violated Borowski's statutory and constitutional rights by dismissing her appeal in violation of the Commission's own regulations and in violation of the Equal Protection Clause of the 14th Amendment.

## JURISDICTION AND VENUE

1.      This action arises under the First and Fourteenth Amendments of the United States Constitution and is brought pursuant to U.S.C. 42 §§ 1983 and 1988.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the New Jersey state law claims under 28 U.S.C. §1367(a).

3.      Venue is proper in the District of New Jersey under 28 U.S.C. § 1391 because the events giving rise to the claims detailed herein occurred in the District of New Jersey.

## PARTIES

4.      Plaintiff Cheryl Borowski is a licensed attorney in New Jersey and a former Adjunct Professor at Kean. Borowski taught a business law course at the Toms River campus of Kean. Borowski resides in New Jersey.

5.      Kean University ("Kean" or "University") is a public university of the State of

New Jersey, with its main campus located in Union, New Jersey.

6.      Dr. Dawood Farahi is the President of Kean.

7.      Dr. Charles Williams was the Director of Affirmative Action Programs at Kean during the relevant time period.

8.      Stephen Kubow is the Acting Associate Vice President of Kean.

9.      Mr. Kenneth Green is the Chief Labor Counsel for Kean.

10.     Faruque Chowdhury is the Director of Human Resources at Kean.

11.     Christopher Myers is the Director of the New Jersey Civil Service Commission.

## FACTUAL ALLEGATIONS

12.     In 2016, Plaintiff Cheryl Borowski, a licensed attorney in New Jersey, was employed as an Adjunct Professor at Kean, where she taught a course in business law to undergraduate students enrolled at Kean. She had taught the course for 5 years.

13.     At the beginning of every class term, Plaintiff would explain her teaching methodology to the students. Plaintiff's method was to play the role of a devil's advocate in which she asked students questions about various legal issues bearing on business law which were controversial, but without expressing her own opinions. Plaintiff utilized Socratic method intending to promote critical thinking by the students. The comments reflected debate points which were suggested for discussion in the textbook which Plaintiff was using. The opinions were selected to represent opinions about legal issues which were held by individuals in the business community and were intended to motivate the students to think of rebuttal arguments to counter the opinions. Plaintiff would propose, for example, that it was acceptable for an employer to terminate a pregnant employee because a pregnant woman is not as productive as a male employee. Using the facts from a Supreme Court decision, <u>International Union v. Johnson</u>

Controls, Inc., for example, Plaintiff would ask the students whether it was acceptable for an employer to refuse to hire pregnant women in order to protect them from the toxic effects of exposure to lead contained in products used in the workplace. Many of the questions implicated issues that were the subjects of existing law. For example, Plaintiff would offer that in order for an individual who is not an American citizen to work in the United States, the individual would have to possess a green card, which is an accurate statement of immigration law.

14.     On March 15, 2016, Plaintiff received an email from Kubow indicating that he and Assistant Dean David Farrokh wished to meet with her the following Tuesday, March 22, after her class.  The email stated, in relevant part: "We have been approached by several students in your class who have raised concerns that we would like to discuss with you.  Please confirm your availability at this time, since Mr. Farrokh will be traveling here from the Union campus."

15.     Plaintiff responded by email on March 21, indicating that, because she had a previously scheduled engagement, she would be unable to attend the meeting, but that a union representative would attend in her stead.

16.     Unfortunately, the union representative who was supposed to attend the meeting in Plaintiff's stead was unable to do so because she had gone to see her physician and the appointment with the physician took longer than was anticipated. When she arrived at the meeting, the union representative was informed that Farrokh had referred the matter to the Human Resources Department.

17..     On March 29, 2016, Defendant Kubow came into Plaintiff's classroom at the conclusion of the class and asked her to step outside. Kubow then informed Plaintiff that she was being removed from the class. Plaintiff was not told why this action was being taken and she was never allowed to return to her class.

18.     Later that day, Kubow sent Plaintiff an email stating:

Thank you for taking time to speak with me today. I just wanted to confirm the content of our conversation. As I stated, your services in the class will no longer be required after today. You will be fully compensated for the entire teaching of the course. We do request you submit your gradebook/grade file or other record of student work, as well as any student papers, etc. that you may still have to GATE 103 as soon as possible. Any other questions can be directed to HR or the Dean's Office in Union. Thank you for your past service to Kean.

19.     On March 30, 2016, Plaintiff sent an email to Chowdhury and Kubow, stating:

Per my conversations with Dr. Chowdhury and Dr. Kubow late yesterday afternoon, neither Dr. Chowdhury nor Dr. Kubow would answer my question regarding why you fired me. Dr. Chowdhury said to send an email to Dr. Chowdhury and Dr. Kubow with questions I have.

Why did you fire me yesterday? I've done nothing wrong.

Dr. Chowdhury said there are allegations. What are the allegations? Who made the allegations? When were these allegations made?

Dr. Chowdhury said there is an investigation. What is the subject of the investigation? What are you investigating? What questions are you asking? Why is there an investigation? To whom are you asking questions?

Please advise.

20.     Later, on March 30, 2016, Chowdhury responded to Plaintiff by email, stating:

This is in response to email regarding you teaching responsibilities. As I mentioned to you yesterday, your employment was not terminated. [This, despite Kubow's statement in his email, "[Y]our services in the class will no longer be required after today. You will be fully compensated for the entire teaching of the course."] The University is initiating an administrative process based on numerous concerns raised by students in your class. These concerns involve your teaching effectiveness of which some may implicate the New Jersey State Policy Prohibiting Discrimination in the Workplace. While this matter is being reviewed, it was determined that an alternate assignment for the course was

necessary.

You will be contacted within the next two weeks regarding the administrative process and the allegations reported by students.

21.   Plaintiff responded to Chowdhury's email that same day, stating:

Just to be clear and with all due respect, there is an error in your email sent to me this morning. Specifically, yesterday you did not say I wasn't terminated. In fact, when I asked you why I was fired, you said that you did not know why I was fired.

You said somebody made allegations. I asked who. You said you did not know. I asked what allegations. You said you did not know. Then you said there was an investigation going on, but you did not know what they were investigating. You said I would be paid for the remainder of the course, and somebody would be replacing me. I asked who. You said, why did I want to know that?

22.   On May 2, 2016, Defendant Williams sent Plaintiff a letter which, for the first time, explained why she had been taken out of her classroom. Williams stated, in relevant part:

I am writing to inform you that you have been named as a respondent in a complaint alleging a violation of the *New Jersey State Policy Prohibiting Discrimination in the Workplace.* (State Policy). Multiple students enrolled in your Spring, 2016 Business II class at Ocean County College have attributed comments and/or references by you that implicated the State Policy. Specifically, the students reported that you made remarks during the course that were offensive and included references to the following: gender (sex), immigration status, nationality/ethnicity, and religion.

Enclosed with the letter was a copy of the Policy (Exhibit 1, attached) and applicable Model Procedures.

23.   On May 18, 2016, an attorney representing Plaintiff sent a letter to Kean, addressed to Williams and Chowdhury, indicating that they were willing to cooperate fully in any investigation Kean was conducting with respect to the unknown allegations which prompted Kean to suspend Plaintiff from her teaching assignment. Her attorney indicated that the suspension had occurred without Kean even interviewing Plaintiff or providing her with any

details regarding what she was accused of having done which warranted Kean's disciplinary action. The attorney accused Kean of violating Plaintiff's due process rights and harming her reputation in the Kean community. Her attorney did not receive a response to his letter from Kean.

24.     On June 9, 2016, Plaintiff filed an Initial Notice of Claim for Damages Against the State of New Jersey with the New Jersey Department of the Treasury, Bureau of Risk Management.

25.     On July 18, 2016, Williams sent a letter to Plaintiff in which he summarized and quoted allegations by several students accusing Plaintiff of expressing negative statements about immigrants and nationality and espousing conventional gender role views regarding women. He closed the letter indicating that Kean had initiated an investigation of the students' allegations and asked for Plaintiff to provide a response to the allegations.

26.     On August 5, 2016, Plaintiff's attorney sent a letter to Green indicating that Plaintiff denied all the allegations made by the students referred to in Williams' July 18 letter and requested that Green provide sufficient materials so that she could respond to the allegations.

27.     On August 11, 2016, Green sent Plaintiff's attorney an email, which stated:

> I am in receipt of your correspondence dated August 5, 2016. Please be advised that your client is being investigated for alleged violations of the State Policy Prohibiting Discrimination. She nor you do not dictate [sic] how Kean University fulfills its legal obligations in this regard. Your client has been provided notice to speak with the Affirmative Action Officer and it is expected that she will cooperate.
>
> As to Ms. Borowski's employment status, her contractual relationship with the University has  concluded and she has been paid in full for her services. As an adjunct, she has no "position for the fall".
>
> As to the processing of the grievances, your client and/or the

> Union have the right to proceed to arbitration within the time limitations provided within the contract after the passage of a certain period of time. You should confer with your client and/or the Union as why she/they has not exercised the right.
>
> Please be guided accordingly.

28.     On September 14 and 15, 2016, Plaintiff emailed lengthy documents to Williams rebutting each of the allegations made against her and noting that the students who filed the complaints misunderstood her teaching methodology, which she had explained at the beginning of the course, by mistaking the opinions she offered as a devil's advocate as being her own opinions.

29.     On October 6, 2016, Audrey M. Kelly, Chief of Staff for the Office of the President, sent Plaintiff a letter, which stated, in relevant part (Exhibit 2):

> The Office of Affirmative Action Programs (OAAP) notified you of concerns reported by students in your Business Law II course during the Spring, 2016 semester by letter dated May 2, 2016 and July 18, 2016. You submitted emails on September 14, 2016 and September 15, 2016 detailing your concerns abut the investigation process, veracity of the students' complaints, and concerns about the University's review of this matter pursuant to the New Jersey State Policy Prohibiting Discrimination in the Workplace (State Policy).
>
> The OAAP investigation reviewed unsolicited documentation and information that was provided by students in your Business II class. After receiving initial complaints from several students, the OAAP contacted other students in your class. Most of the students contacted corroborated the initial complaints by students that you made gender-based remarks, comments about religion, and comments about national origin and ethnicity. Despite your assertion that your discussions were "debate points" and constituted "free speech" and "academic freedom," the information provided does not support a connection to your repeated comments with the course's academic content. Rather, based on the information available, your comments that implicated the State Policy were more likely than not expressions of your personal feelings and beliefs.

The Office of Affirmative Action Programs has completed its investigation of this matter, and this letter is the final determination by Kean University. Based on a review of the testimony and the information provided by students in your class, your comments were not associated with the course's academic content. Based on the State Policy's zero tolerance threshold, the comments that you made during the course that implicating [*sic*] the policy, i.e., gender, national origin, religion, and ethnicity constituted a policy violation. Since the State Policy is a zero tolerance policy, derogatory or demeaning references associated with a protected category in the State Policy, regardless of intent, may constitute a violation of the policy. The investigation revealed other concerns raised by students that involved teacher effectiveness and teaching methods for the course. These concerns will be referred to the appropriate office.

. . .

If you wish to appeal this determination, you must submit a written appeal to the New Jersey Civil Service Commission, Division of Merit System Practices and Labor Relations, Written Record Appeals Unit, P.O. box 312, Trenton, NJ 08625-0312, postmarked or delivered within 20 days of your receipt of this determination. Your appeal must include a copy of this determination, the reason for the appeal and the specific relief requested.

30.     On October 21, 2016, Plaintiff filed a timely appeal with the Commission, per the instructions in Ms. Kelly's letter. (Exhibit 3, attached, minus attachments.)

31.     On November 10, 2016, Walker Ristau, Personnel and Labor Analyst for the Commission, sent a letter to Plaintiff and Williams indicating that Kean's response to Plaintiff's appeal "must be filed with this office, with copies to the appellant and the Director of EEO/AA, within 20 calendar days of receipt of this letter." Assuming that Kean received Ristau's letter by November 15, 2016, Kean had until December 5, 2019, to file its response to Plaintiff's appeal.

32.     On December 6, 2019, after Kean's response was already due, Williams sent a letter to Ristau, copied to Plaintiff, confirming that Kean had been granted an extension of the deadline for filing its response until January 12, 2017, a total of 52 days after Plaintiff had filed her appeal. The extension was granted without Kean having filed a motion to extend the due date

for its response, and without having notified Plaintiff that an extension had been requested.

33.     On January 23, 2017, Plaintiff sent Ristau an email, stating:

> I have not received any information from Kean nor from you. <u>The extended deadline of January 12, 2017 by which Kean was required to submit information expired 12 days ago</u>.
>
> Would you please advise regarding the status of my appeal? Thank you for your attention to this matter.

(Underscoring in the original.)

34.     On January 23, Ristau responded to Plaintiff's email by stating:

> You won't receive any information from the Commission until a decision has been rendered. I will have to check the file to see if anything has been received from Kean, but I do recall having received something. Our office is being remodeled right now and your file is in a box somewhere. Once I find it, I will get back to you.

35.     Upon information and belief, in its response to Plaintiff's appeal Kean requested that the appeal be dismissed.

36.     On June 21, 2017, the Commission issued an Order denying Kean's request that Plaintiff's appeal be dismissed, stating, in relevant part:

> [M]aterial disputes of fact exist which warrant granting a hearing at the Office of Administrative Law (OAL) with regard to the appellant's appeal of the finding that she violated the State Policy. Kean contends that the complained of comments were unrelated to the course content and therefore are not protected by academic freedom. The appellant argues that her comments were "debate points" related to the course content and, therefore, protected by academic freedom. Although the appellant provides the course syllabus and lists several instances where her comments could relate to topics covered in the course textbook, the record is unclear whether or not her comments sufficiently relate to the course content and were intended to encourage discussion in class rather than her simply stating her opinions as fact as alleged by the complainants. Under these circumstances, the Commission finds that disputed issues of material facts exist which cannot be determined on the written record, thereby requiring a hearing in the

matter where an Administrative Law Judge (ALJ) may evaluate evidence and assess the credibility of the witnesses. Therefore, the Commission grants a hearing at the OAL on the sole issue specified above.

37.     Former Deputy Attorney General Mendez, representing Kean, requested that the hearings be postponed for several months, claiming that students which Kean wished to call as witnesses were not available to testify because they were still in school. As it turned out, Mendez misrepresented because the only student Kean called as a witness had already graduated before the Commission had issued its Order assigning the appeal to be heard by the OAL.

38.     Mendez continued to delay the hearings by manufacturing bogus excuses for postponing the hearings.

39.     A pre-hearing conference was not conducted until December 2017, in Newark, New Jersey.

40.     In February 2018, Plaintiff learned for the first time the names of the students who had filed complaints about her and what the content of the complaints was.

41.     The hearing was commenced before Administrative Law Judge Elissa Mizzone-Testa on June 14, 2018, and continued over three days – June 14, June 20 and June 26. During the hearing, Kean was represented by Mendez.

42.     On the final day of the hearing, the parties' attorneys gave closing arguments and arranged with the ALJ to have post hearing briefs filed within 75 days of the last hearing date, allowing 45 days for the preparation of the hearing transcript.   Briefs were thus due on September 9, 2018.

43.     On October 4, 2018, Mendez wrote a letter to ALJ Testa, stating that:

Kean University is in receipt of correspondence from the Director of the Civil Service Commission (CSC) regarding a separate

> matter that impacts this case. Please see attached letter dated October 1, 2018. In this letter, the Director expressly says adjunct professors are not considered Civil Service employees and therefore do not have the right to appeal a State Policy determination. This directly impacts Borowski's appeal as the CSC does not have jurisdiction to review these matters.
>
> Given this letter, we request this matter be formally withdrawn. Should your Honor need any additional information, please do not hesitate to contact our office.

Mendez copied Myers on the letter. (Exhibit 4).

44.     The letter Mendez was referring to related to another professor at Kean, Dr. Davida Schuman, who, like Plaintiff, had been charged with violating the Policy. Without a hearing, Dr. Schuman was determined to have violated the Policy and her appeal to the Commission was dismissed by Myers because he maintained the Commission did not have jurisdiction over appeals by professors charged with violating the Policy. (Exhibit 4).

45.     On October 19, 2018, Myers sent a letter to ALJ Testa. In the letter, Myers asserted that because professors and adjunct professors were removed from the coverage of Title 11A of the New Jersey Statutes, they were not entitled to appeal rulings that they had violated the Policy. Myers made this assertion despite acknowledging that the very terms of the Policy indicate that the provisions of the Policy apply to all employees and applicants for employment of the State. In closing, Myers stated:

> Consequently, as the issue of the Commission's jurisdiction was not raised prior to its review of C.B.'s appeal, the matter of the disputes of material fact was improperly referred to OAL for a hearing. As noted above, the matter of jurisdiction arose in another case before the Commission [*i.e.*, Dr. Schuman's case] and it was determined that certain classes of State College and University employees, such as adjunct professors and professors, were statutorily removed from the provisions of Title 11A effective July 9, 1986. Therefore, since July 2018, the Commission has advised those employees serving in a position not subject to Title 11A that it does not have the jurisdiction to review any type of appeal.

(Exhibit 5).

46.     Based on Myers' letter, by Order dated October 23, 2018, ALJ Testa dismissed Plaintiff's appeal.  (Exhibit 6).

47.     On November 2, 2018, Plaintiff's then attorney filed an appeal of the ALJ's dismissal Order with the Civil Service Commission, arguing that the Commission was estopped from denying jurisdiction after the matter had been assigned to an ALJ and the hearing had been concluded.

48.     On November 23, 2018, the Civil Service Commission (CSC) entered an Order affirming the dismissal of Plaintiff's appeal for lack of jurisdiction, stating in relevant part:

> [A]s the appellant in this matter was an Adjunct Professor, her appeal to the Commission of the determination made regarding the subject State Policy matter was invalid. The Commission notes that variables such as the fact that its interpretation of the rules above prohibiting such classes of employees the right to appeal discrimination matters to the Commission occurred after the appellant's original appeal, or the fact that other previous appellants may have been afforded such rights, cannot be used as a justification for the continuance of any such appeal. It is clear from the Commission's analysis that such employees do not have the right to appeal discrimination determinations to the Commission and any such appeals permitted previously were allowed in error. Thus, a current appellant cannot assert any estoppel or other rights to such an appeal as no vested or other rights are accorded by an administrative error.

(Exhibit 7).

49.     Plaintiff had detrimentally relied on the Commission's prior representation that it had jurisdiction to hear her appeal by retaining the services of three law firms over a period of two years and paying for legal representation during a three-day hearing, exhausting her savings.

50.     After Plaintiff's contract with Kean was not renewed, she applied for numerous other positions, including teaching positions, for which she was qualified, without success.

Plaintiff believes that her failure to be hired for these positions is attributable to her having been abruptly terminated from her teaching position at Kean midway through the semester.

51.     Plaintiff had a defined benefit pension. Unless she was on a leave of absence or lay-off, Plaintiff was required to find new employment with the State within two years of her last date of work. At Plaintiff's request, her attorney asked Green to write a letter indicating that she had been laid off, since Kean was insisting that she had not been terminated, but Green refused. She was therefore required to begin drawing on her pension by July 1, 2018. In so doing, Plaintiff was thereafter barred from seeking any additional employment with the State of New Jersey, which in turn has precluded her from making any additional contributions to her pension and obtaining free health care.

52.     The Defendants' conduct has caused Plaintiff extreme emotional distress and the loss of pension benefits and of past and future income.

### CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FIRST AMENDMENT UNDER 42 U.S.C. § 1983

53.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

54.     The free speech provision of the 1st Amendment of the United States Constitution applies to the States pursuant to the 14th Amendment.

55.     Plaintiff is accordingly entitled to the protection of her 1st Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983, which states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

56.     By filing her appeal with the Commission, conducting the adversarial proceeding before the ALJ, and appealing the ALJ's dismissal of her appeal to the Commission, Plaintiff exhausted her administrative remedies.

57.     The two-year statute of limitations which applies to actions filed pursuant 42 U.S.C. § 1983 in New Jersey federal court was tolled while Plaintiff was exhausting her administrative remedies. See Freeman v. State, 347 N.J. Super. 11 (N.J. Super. App. Div. 2002); Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001). By directing Plaintiff that in order to appeal its determination that she had violated the Policy Plaintiff had to file an appeal with the Commission, Kean is equitably estopped from denying that the statute of limitations was tolled. See W.V. Pangborne Co. v. N.J. Dept. of Transportation, 116 N.J. 543 (N.J. 1989). Consequently, the two-year statute of limitations did not begin to run until November 24, 2018. Plaintiff's lawsuit has accordingly been timely filed.

58.     The following factors indicate that Kean does not enjoy 11th Amendment immunity from being sued in federal court: (1) The State of New Jersey would not be required to pay a judgment in the event Plaintiff prevails on any of her claims against Kean; (2) Kean retains the right to independently incorporate, N.J.S.A §18A:64-6(a); (3) Kean, pursuant to statute, enjoys a degree of autonomy not enjoyed by other state agencies, N.J.S.A. 18A:3B-27; and (4), the Higher Education Restructuring Act of 1994, N.J.S.A. 18A:3B-2, et seq., has significantly increased the authority that Kean's governing board exercises, thereby providing the University with substantially greater autonomy than other State agencies.  See, generally, Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3rd Cir. 1989); Sharp v Kean, Civ. No. 2:14-

423 (D.N.J. 2014).

59.     Since Kean does not enjoy 11th Amendment immunity as an alter ego of the State

of New Jersey, it qualifies as a "person" under 42 U.S.C. §1983. See Fuchilla v. Layman, 109

N.J. 319 (N.J. 1988).

60.     Each of the individually named Defendants, and in particular Defendants Farahi,

Green, and Chowdhury, have final policy making authority which renders Kean liable for their

decisions and conduct. See Pembauer v. City of Cincinnati, 475 U.S. 469 (1986).

61.     The Policy is facially unconstitutional for three reasons: (1) it is neither content

nor viewpoint neutral; (2) many of its provisions are unconstitutionally vague; (3) many of its

provisions are unconstitutionally overbroad. The Policy is so permeated with unconstitutional

provisions that it is unconstitutional in its entirety and unenforceable.

62.     The unconstitutionality of the Policy was clearly established by numerous legal

precedents many years before the events giving rise to this lawsuit occurred. See, e.g., R.A.V. v.

St. Paul, 505 U.S. 377 (1992); Baggett v. Bullitt, 377 U.S. 360 (1964); Broadrick v. Oklahoma,

413 U.S. 601 (1973); Dejohn v. Temple Univ., 537 F.3d 301 (3d Cir. 2008); Sypniewski v.

Warren Hills Regional Bd., 307 F.3d 243 (3d Cir. 2002); Saxe v. State College Area School

District, 240 F.3d 200 (3d Cir. 2001); State v. Vawter, 136 N.J. 56 (1994).

63.     Since the Policy is unconstitutional, Plaintiff may not be deemed to have violated

the Policy with respect to any of the alleged conduct she was accused of. A public employee

cannot be held to have violated an unconstitutional statute, ordinance, regulation or policy.

64.     The determination that Plaintiff had violated the Policy was therefore itself an

unconstitutional and invalid determination. In addition, any disciplinary action which was

imposed on Plaintiff on the basis that she had violated the Policy was unconstitutionally

imposed.

WHEREFORE, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff and determine that her 1st Amendment rights were violated by Kean's abrupt termination of her contract for purportedly violating the unconstitutional Policy; order that Kean implement either of the following: either provide her with four years full-time pension credit with managerial status salary and free lifetime health care benefits, or promote her to the position of a full-time professor for four or more years at the Toms River campus; enter a declaratory judgment stating that the Policy is facially unconstitutional and hereafter unenforceable; conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory damages against Kean for emotional distress and loss of pension benefits and past and future income, and her compensatory and punitive damages against the individually named University Defendants in their individual capacities; award her attorneys reasonable attorney fees pursuant to 42 U.S.C. §1988; and grant Plaintiff such other and further relief as the court may deem just and proper.

## COUNT II

## VIOLATION OF PLAINTIFF'S PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983, AS ENTAILED BY THE FOURTEENTH AMENDMENT

65.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

66.     Since Plaintiff was a non-tenured adjunct professor, she did not have a property interest in her continued employment. However, she had a liberty interest under the 14th Amendment which entailed that she could not be disciplined for actually performing the requirements of her job as a professor teaching business law or without procedural due process.

Board of Regents v. Roth, 408 U.S. 564 (1972).

67.     Even if the Policy were constitutional, the allegation that Plaintiff violated its provisions was false, since the statements allegedly attributed to her were made as part of her teaching methodology to encourage her students to think analytically and did not represent her personal opinions. Plaintiff was penalized for actually performing the job she was hired to perform, violating her right to substantive due process.

68.     The linchpins of procedural due process are notice and the opportunity to be heard at a meaningful time, and in a meaningful manner. Mullane v. Central Hanover Tr. Co., 339 U.S. 306 (1950).

69.     Plaintiff's right to procedural due process was violated because she was never informed prior to her abrupt removal from teaching her class precisely what infraction she was of accused of committing, thereby violating her right to notice. Nor was she given an opportunity to be heard at a meaningful time, and in a meaningful manner, thereby violating her liberty interest under the 14th Amendment.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff holding that Kean violated Plaintiff's procedural and substantive due process rights; order that Kean implement either of the following: either provide her with four years full-time pension credit with managerial status salary and free lifetime health care benefits, or promote her to the position of a full-time professor for four or more years at the Toms River campus; conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory damages against Kean for emotional distress and the loss of pension benefits and past and future income, and her compensatory and punitive damages against the individually named University Defendants in their individual capacities; award her attorneys reasonable attorney fees pursuant

to 42 U.S.C. §1988; and grant Plaintiff such other and further relief as the court may deem just and proper.

**COUNT III**

**VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983, AS ENTAILED BY THE FOURTEENTH AMENDMENT**

70.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

71.     Myers' claim that the Commission did not have jurisdiction over appeals filed by professors and adjunct professors who have been determined to have violated the Policy was contrary to the express, unambiguous language of the Policy.

72.     Professors and adjunct professors are designated as unclassified employees. Under the Policy, N.J.A.C. 4A:7-3.1(a)1,  all public employees were required to comply with its terms prohibiting discrimination in the workplace and were subject to disciplinary action for violating its provisions.

73.     Under N.J.A.C. 4A:7-3.2(n)(3), "If disciplinary action has been recommended in the final letter of determination, the party(ies) charged may appeal using the procedures set forth in N.J.A.C. 4A:2-2 and 3."  Under the latter provisions, appeals are heard by the Commission pursuant to N.J.A.C. 4A:2-2.9.

74.     In In re Hearn, 417 N.J. Super. 289 (App. Div. 2010), the New Jersey Superior Court, Appellate Division, had already rejected Myers' interpretation of the Policy and held that any New Jersey public employee who had been deemed to have violated the Policy and had been assessed disciplinary action for that violation was entitled to appeal to the Commission. Thus, the letters sent by Deputy Attorney General Mendez, and Director Myers, and the Order entered by ALJ Testa and Commission Chief Cobb all violated the express terms of the Policy and violated

the Appellate Division's holding in In re Hearn, supra.

75.     By violating the express terms of the Policy and dismissing Plaintiff's appeal, the Commission and the Director of the Commission **deliberately and intentionally** violated Plaintiff's right to procedural due process under the 14th Amendment.

76.     Moreover, defendant Myers was estopped from directing the dismissal of Plaintiff's appeal on the demonstrably erroneous claim that the CSC did not have jurisdiction over the appeal, where Plaintiff had detrimentally relied on the Commission's initial position that it did have jurisdiction, by expending significant sums of money in order to retain attorneys to file the appeal and to conduct the three-day hearing.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff holding that said Defendants violated her procedural due process rights; direct that the Civil Service Commission enter a finding overturning Kean's finding of a Policy violation; order that Kean implement either of the following: either provide her with four years full-time pension credit with managerial status salary and free lifetime health care benefits, or promote her to the position of a full-time professor for four or more years at the Toms River campus; and conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory and punitive damages against defendant Myers named in his individual capacity; award her attorneys reasonable attorney fees pursuant to 42 U.S.C. §1988; and grant Plaintiff such other and further relief as the court may deem just and proper.

## COUNT IV

## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## OF THE FOURTEENTH AMENDMENT

77.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

78.     The position of Myers that all public employees in the State of New Jersey were required to comply with the provisions of the Policy, and that all public employees were subject to disciplinary action if it was determined that they violated the Policy, and that all public employees, with the exception of professors and adjunct professors, were entitled to file appeals with the Commission to contest a ruling that they had violated the Policy and to contest any disciplinary action assessed against them, violated the Equal Protection Clause of the 14th Amendment. Their erroneous interpretation of the Policy, which created a disparity in the appellate rights of public employees, was not rationally related to a legitimate state interest.

79.     This erroneous interpretation, reached in bad faith, and consequent violation of plaintiff's right to equal protection under the 14th amendment resulted in significant prejudice to plaintiff in leaving her without an adequate remedy equal to that of others similarly situated and caused her to incur substantial expenses including attorneys' fees pursuing a remedy denied her by defendant Myers.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff holding that said Defendants violated the Equal Protection Clause of the 14th Amendment and conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory and punitive damages against Myers named in his individual capacity; award her attorneys reasonable attorney fees pursuant to 42 U.S.C. §1988; and grant Plaintiff such other and further relief as the court may deem just and proper.

## COUNT V

## PARTICIPATION IN A CIVIL CONSPIRACY IN VIOLATON OF 42 U.S.C. § 1983

80.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

81.     The Office of Administrative Law ("OAL"), created pursuant to <u>N.J.S.A.</u> 52:14F-1 *et seq.,* is a separate, independent agency of the State of New Jersey.

82.     Under the enabling statute, the OAL "is given general jurisdiction to conduct the hearings in contested cases for all state agencies through independent administrative law judges." <u>Unemployed-Employed Council of N.J., Inc. v. Horn</u>, 85 N.J. 646, 648 (N.J. 1981).

83.     The purpose of enacting the OAL legislation was to minimize the influence of agencies in the outcome of contested matters. "The act frontally addresses this particular evil by requiring agency hearings in such situations to be conducted by administrative law judges, <u>who are statutorily independent of the agency and therefore free of any agency predisposition or bias</u>." <u>Unemployed-Employed Council</u>, <u>supra</u>, 85 N.J. at 656.  (Emphasis supplied.)

84.     Under the terms of the OAL legislation,

> Since the basic responsibility for administrative adjudication reposes in the agency, the agency head has the inherent power to review any order or ruling made by an ALJ during the hearing of a contested case. The agency head can consider any ALJ ruling <u>in conjunction with his review of the ALJ's recommended decision, which is presented to the agency head at the conclusion of the hearing for his final acceptance, rejection or modification, pursuant to N.J.S.A. 52:14B-10(c)</u>. Further, any valid rule governing the conduct of administrative hearings must recognize the agency head's right to decide whether a particular order affecting the conduct of such hearings should be reviewed <u>on an interlocutory basis</u>.

> <u>In re the Appeal of Certain Sections of the Uniform Administrative Procedure Rules</u>, 90 N.J. 85, 96 (N.J. 1982).  (Emphasis supplied.)

85.     The letter by defendant Myers directing ALJ Testa to dismiss Plaintiff's appeal violated and subverted the provisions and purpose of the OAL legislation. On its face it contradicts controlling authority of the intermediate appeals court in New Jersey and was the product of a conspiracy between Myers and others presently unknown to deprive unclassified

personnel like Plaintiff procedural and substantive due process and equal protection of the law.

86.     Under the terms of the legislation, ALJ Testa was required to conduct the hearing of Plaintiff's appeal and issue a recommended decision containing findings of fact and conclusions of law, which would be submitted to the Commission for its review. The Commission would then have had before it a complete decision which evaluated the evidence presented at the hearing. If the Commission determined, at that point, there was a question regarding the Commission's jurisdiction over Plaintiff's appeal, it could have had the issue briefed by the parties, thereby providing Plaintiff notice and an opportunity to be heard regarding the purported lack of jurisdiction.

87.     Defendant Myers, in consultation and coordination with others presently unknown, *sua sponte* determined that the CSC lacked jurisdiction to hear Plaintiff's appeal and short-circuited the proper procedure by sending a letter to the ALJ conducting the hearing directing her to dismiss the appeal. Instead of acceding to the directives in the letters, ALJ Testa should have informed the Defendants that, as an independent ALJ, she was required to deny the relief demanded in the letters and directed them to file an interlocutory appeal to the Commission, in which Kean would have had the burden of proving that the Commission did not have jurisdiction. This would have allowed Plaintiff to oppose the interlocutory appeal, both on the grounds that the Policy did in fact expressly give the Commission jurisdiction over her appeal, and that the Commission was estopped from denying it had jurisdiction, since she had detrimentally relied on the initial determination that it did have jurisdiction by assigning the appeal for hearing before an ALJ, requiring Plaintiff to expend significant sums of money to participate in the three-day hearing. Instead, by ALJ Testa acceding to the demands in the letters and entering an Order dismissing the appeal, Plaintiff was compelled to appeal the dismissal to

24

the Commission. This shifted the burden of proof from Kean to Plaintiff, in violation of the statute. By affirming ALJ Testa's dismissal Order, instead of overturning the Order as having violated the procedure set forth in the legislation, the CSC also subverted the statute and violated Plaintiff's due process rights under the 14th Amendment.

88.     As of 2018, the proper procedure was clearly established by the cited case law.

89.     By their conduct, Myers and the others with whom he worked in concert to develop the erroneous legal conclusion that the CSC lacked jurisdiction and therefore direct dismissal of Plaintiff's appeal, engaged in a civil conspiracy to deprive Plaintiff of her due process rights in violation of 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff holding that said Defendants violated her procedural due process rights and conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory and punitive damages against conspiring defendants in their individual capacities; award her attorneys reasonable attorney fees pursuant to 42 U.S.C. §1988; and grant Plaintiff such other and further relief as the court may deem just and proper.

## PENDENT STATE LAW CLAIMS

## COUNT VI

## VIOLATION OF PLAINTIFF'S FREE SPEECH RIGHTS UNDER ARTICLE I, § 6 OF THE NEW JERSEY CONSTITUTON PURSUANT TO N.J.S.A. 10:6-2

90.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

91.     Pursuant to N.J.S.A. 10:6-2(c), Plaintiff is entitled to sue Kean and the individually named Defendants who are/were employed by Kean for depriving her of "any substantive due process . . . rights, privileges or immunities secured by the Constitution or laws

of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State." N.J.S.A. 10:6-2 is the New Jersey equivalent of 42 U.S.C. §1983. See Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).

92.     The said Defendants' conduct as set forth above in charging Plaintiff with the violation of the unconstitutional Policy, abruptly removing her from her class, and refusing to renew her contract by virtue of the allegation that she violated the unconstitutional Policy, violated Plaintiff's right of free speech under Article I, § 6 of the New Jersey Constitution.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff; order that Kean implement either of the following: either provide her with four years full-time pension credit with managerial status salary and free lifetime health care benefits, or promote her to the position of a full-time professor for four or more years at the Toms River campus; enter a declaratory judgment stating that the Policy is facially unconstitutional and hereafter unenforceable; conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory damages against Kean for emotional distress and loss of pension benefits and past and future income, and her compensatory and punitive damages against the individually named Defendants in their individual capacities; award her attorneys reasonable attorney fees pursuant to N.J.S.A. 10:5-27.1; and grant Plaintiff such other and further relief as the court may deem just and proper.

## COUNT VII

## VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER ARTICLE I, § 1 OF THE NEW JERSEY CONSTITUTON PURSUANT TO N.J.S.A. 10:6-2

93.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

94.     Article I, § 1 of the New Jersey Constitution incorporates the right to be provided

due process of law against the State's deprivation of property or liberty. See Greenberg v. Kimmelman, 95 N.J. 552 (N.J. 1985).

95.     As set forth above, the conduct of Defendants deprived Plaintiff of her liberty interests and due process rights in violation of her rights under Article I, § 1 of the New Jersey Constitution.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff and order that Kean implement either of the following: either provide her with four years full-time pension credit with managerial status salary and free lifetime health care benefits, or promote her to the position of a full-time professor for four or more years at the Toms River campus; conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's compensatory and punitive damages against the individually named Defendants in their individual capacities; award her attorneys reasonable attorney fees pursuant to N.J.S.A. 10:5-27.1; and grant Plaintiff such other and further relief as the court may deem just and proper.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

97.     The Defendants have engaged in the following extreme and outrageous conduct, either intentionally or recklessly:

a.     Abruptly removing Plaintiff from her class in the middle of the semester, without any explanation as to why they were doing so.

b.     Failing to provide any information regarding what she was accused of for months.

c.      Conspiring to have her appeal dismissed on the illegitimate and legally erroneous

claim that the  Commission did not have jurisdiction over her appeal.

98.     The Defendants' outrageous and egregious conduct has caused Plaintiff severe

emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of

Plaintiff and conduct a jury trial in order to determine any disputable issues of fact and Plaintiff's

compensatory and punitive damages against the individually named Defendants in their

individual capacities; award her attorneys reasonable attorney fees pursuant to N.J.S.A. 10:5-

27.1; and grant Plaintiff such other and further relief as the court may deem just and proper.

WILLIAMS CEDAR LLC

By:      _____/s/  Kevin Haverty_____
         KEVIN HAVERTY
         Attorney for Plaintiff

Dated: April 27, 2020

## JURY DEMAND

Plaintiff hereby demands a jury trial for all issues triable by a jury.

WILLIAMS CEDAR LLC

By:      _____/s/  Kevin Haverty_____
         KEVIN HAVERTY
         Attorney for Plaintiff

Dated: April 27, 2020