UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHERYL BOROWSKI,** | Civ. No. 2:20-cv-5172 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **KEAN UNIVERSITY et al.,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.**

      Plaintiff Cheryl Borowski ("Plaintiff"), a former adjunct professor at Kean University, brings this action against the University, certain related defendants, and a director of a division at the New Jersey Civil Service Commission seeking redress under 42 U.S.C. § 1983, the New Jersey Civil Rights Act, and common law. Plaintiff alleges she was unlawfully relieved of her teaching duties after students reported she made offensive remarks while teaching. Plaintiff also alleges the administrative appeals process she pursued to challenge her termination was unconstitutional. This matter is now before the Court on two motions: a motion to dismiss by Defendants Kean University, Dawood Farahi, Charles Williams, Stephen Kubow, Kenneth Green, and Faruque Chowdhury pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 28; and a motion to dismiss by Defendant Allison Chris Myers pursuant to the same, ECF No. 29. For the reasons set forth below, the motions are **GRANTED.**

      **I.    BACKGROUND[1]**

      Plaintiff is a former adjunct professor at Kean's Toms River campus in Toms River, New Jersey. Compl. ¶ 4, ECF No. 1. Kean University ("Kean") is a public university with a main campus in Union, New Jersey. *Id.* ¶ 5. Defendants Dawood Farahi, Charles Williams, Stephen Kubow, Kenneth Green, and Faruque Chowdhury (collectively, the "Individual Kean Defendants" and together with Kean, the "Kean Defendants") are Kean

---

[1] For the purpose of deciding the instant motions, the Court draws all facts from Plaintiff's Complaint and the documents incorporated therein, accepting all well-pleaded allegations as true and interpreting them in the light most favorable to Plaintiff. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125-26 (3d Cir. 2016).

1

employees in various leadership and senior management positions. *Id.* ¶¶ 6-10. Defendant Allison Chris Myers[2] is the Director of the Division of Appeals and Regulatory Affairs for the New Jersey Civil Service Commission ("Commission").[3] Compl. Ex. 7 at 3.

In 2016, Kean employed Plaintiff, as it had done the past five years, to teach an undergraduate business law course. Compl. ¶ 12. Plaintiff's teaching method involved presenting students with hypothetical, controversial legal issues to promote debate and critical thinking. *Id.* ¶ 13. In March of 2016, Plaintiff received an email from Defendant Kubow scheduling a meeting to discuss concerns raised by students in her class. *Id.* ¶ 14. Plaintiff was unable to attend the meeting and learned that the matter had been referred to Kean's Human Resources Department. *Id.* ¶¶ 15-16. Two weeks later, Defendant Kubow informed Plaintiff that Kean was removing her from the class and no longer required her teaching services, but would compensate her for the entire course. *Id.* ¶¶ 17-18. Defendant Chowdhury clarified that Kean was not terminating Plaintiff, but rather initiating an "administrative process" based on the students' concerns. *Id.* ¶ 20. On May 2, 2016, by way of letter from Defendant Williams, Kean explained to Plaintiff that she had been named as a respondent in a complaint alleging that she made remarks in class about gender, immigration status, nationality, ethnicity, and religion that were offensive and in violation of the New Jersey State Policy Prohibiting Discrimination in the Workplace (the "State Workplace Policy"). *Id.* ¶ 22. Kean investigated the matter, during which it notified Plaintiff that her teaching contract would not be renewed for the following academic term. *Id.* ¶¶ 25-28. On October 6, 2016, Kean sent Plaintiff a final determination letter advising her it had completed the investigation and found her remarks to be a violation of the State Workplace Policy. *Id.* ¶ 29. Kean's letter further advised that she could appeal the determination to the Commission. *Id.*

Plaintiff timely appealed. *Id.* ¶ 30. The Commission referred the matter for a hearing before an Administrative Law Judge ("ALJ"), who conducted a three-day hearing in June of 2018. *Id.* ¶¶ 36, 41. On October 4, 2018, Deputy Attorney General Marolhin Mendez, representing Kean, forwarded to the ALJ a letter from Defendant Myers as the Commission's Director of the Division of Appeals and Regulatory Affairs. *Id.* ¶ 43, Ex. 4. The letter, which was sent by Defendant Myers to counsel in a separate matter involving another Kean professor, stated that the agency determined that professors and adjunct professors are not considered Civil Service employees and therefore do not have the right to appeal a State Workplace Policy determination to the Commission. *Id.* ¶¶ 43-44, Ex. 4. Given Defendant Myers's letter, Deputy Attorney General Mendez requested that the matter be formally withdrawn. *Id.* ¶ 43, Ex. 4. On October 19, 2018, Defendant Myers directly notified the ALJ that the Commission consequently did not have jurisdiction over Plaintiff's appeal and that her matter was improperly referred to the Office of Administrative Law for a hearing. *Id.* ¶ 45, Ex. 5. The ALJ dismissed Plaintiff's appeal on

---

[2] Previously known as Christopher Myers.
[3] Contrary to Plaintiff's Complaint, Defendant Myers was not the Director of the Civil Service Commission at the time this matter was filed, but of a particular division within it. Myers Mov. Br. 1 n.2, ECF No. 29.

October 23, 2018. Compl. ¶ 46, Ex. 6. Plaintiff appealed the dismissal to the Commission, which issued a final agency decision on November 23, 2018, affirming the ALJ's ruling and dismissing Plaintiff's appeal for lack of jurisdiction. Compl. ¶¶ 47-48, Ex. 7.

## II.   PROCEDURAL HISTORY

As a result of the above events, Plaintiff filed the Complaint in this matter on April 28, 2020, seeking declaratory and injunctive relief and damages on eight causes of action. The Kean Defendants and Defendant Myers first separately moved to dismiss the Complaint in July 2020. ECF Nos., 8, 10. This Court, holding that abstention under *Younger v. Harris*, 401 U.S. 37 (1971) applied, granted Defendants' motions to dismiss. ECF Nos. 20, 21. On appeal, the Third Circuit held that the *Younger* abstention did not apply and vacated this Court's judgment and remanded for further proceedings. ECF Nos. 24, 26. The Kean Defendants and Defendant Myers now again separately move to dismiss the Complaint for lack of subject matter jurisdiction by virtue of Eleventh Amendment sovereign immunity, qualified immunity, and for failure to state a claim. The matter is fully briefed, and the Court decides the motion on the papers without oral argument. Fed. R. Civ. P. 78(b).[4]

## III.   LEGAL STANDARD

"In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true. In a facial attack, the court applies the same standard as under Rule 12(b)(6)." *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 765 F. App'x 802, 805-06 (3d Cir. 2019) (citations and quotation marks omitted).

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation marks omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

---

[4] The Court will refer to the parties' submissions as follows: Kean Defendants' Motion to Dismiss ("Kean Mov. Br."), ECF No. 28; Plaintiff's Brief in Opposition to Kean Defendants' Motion to Dismiss ("Kean Opp. Br."), ECF No. 31; Kean Defendants' Reply Brief ("Kean Reply Br."), ECF No. 33. Defendant Myers's Motion to Dismiss ("Myers Mov. Br.)", ECF No. 29; Plaintiff's Brief in Opposition to Defendant Myers's Motion to Dismiss ("Myers Opp. Br."), ECF No. 32; Defendant Myers's Reply Brief ("Myers Reply Br."), ECF No. 36.

The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This facial-plausibility standard is met where the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### IV. ANALYSIS

#### A. Claims Against the Kean Defendants

Count I alleges that the Kean Defendants violated Plaintiff's First Amendment rights by terminating her contract pursuant to the facially unconstitutional State Workplace Policy. Compl. ¶¶ 53-64. Count II further alleges that Plaintiff's termination violated her procedural and substantive due process rights under the Fourteenth Amendment. *Id.* ¶¶ 65-69. Counts VI through VIII of Plaintiff's Complaint allege that the Kean Defendants violated the analogous provisions of the New Jersey State Constitution and subjected Plaintiff to intentional infliction of emotional distress. *Id.* ¶¶ 90-98.

#### 1. Eleventh Amendment Immunity

The Kean Defendants first assert that Kean University, along with the Individual Kean Defendants as its officers, are "arms of the state" that are protected by Eleventh Amendment immunity. Kean Mov. Br. 9. The Eleventh Amendment "has been interpreted to make states generally immune from suit by private parties in federal court." *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). Additionally, the Supreme Court has "read the Amendment to bar not only suits against States themselves, but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).[5]

##### i. *"Arm of the State" Analysis*

Whether an entity is deemed an "arm of the state" within the ambit of the Eleventh Amendment depends on the balancing test of three co-equal factors articulated by the Third Circuit in *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). "[T]he *Fitchik* factors are (1) the funding factor: whether the state treasury is legally

---

[5] Eleventh Amendment immunity also extends to state officials sued in their official capacity, but "[s]uits against state officials in their personal or individual capacity, however, are not [so] barred[.]" *Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 411 (M.D. Pa. 2008) (citing *Melo v. Hafer,* 912 F.2d 628, 635 (3d Cir. 1990) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985))).

4

responsible for an adverse judgment entered against the alleged arm of the State; (2) the status under state law factor: whether the entity is treated as an arm of the State under state case law and statutes; and (3) the autonomy factor: whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control." *Maliandi*, 845 F.3d at 83.

In *Maliandi*, the Third Circuit evaluated a statutory regime governing several state public colleges, N.J.S.A. § 18A:64-1, *et seq*. ("State Colleges Statute"), to evaluate whether Montclair State University ("MSU") was considered an arm of the state under the *Fitchik* factors.[6] In their brief, the Kean Defendants argue that because Kean was also governed under the State Colleges Statute, the Court should follow the *Maliandi* Court in holding that Kean is an arm of the state. Kean Mov. Br. 12. The Court notes that in 2021, after this case was commenced, the state legislature enacted the Kean University Act (the "Act"), N.J.S.A. § 18A:64O-1, *et seq.* This Act appears to take Kean out of its previous statutory regime—the State Colleges Statute—and establishes it as a "public urban research university." S.B. 3811, 219th Legis., 2d Ann. Sess. (N.J. 2020). It also provides the board of trustees with "authority similar to that of the boards of other public research universities in the State." *Id.* After supplemental briefing on the impact—if any—of this Act on the Kean Defendants' Eleventh Amendment immunity claims, ECF No. 37-39, Plaintiff raised the notion that because this Act was passed after this case was commenced and years after Plaintiff's cause of action accrued, it may not apply to this matter, ECF No. 39 at 1. The Court agrees with this notion. *Cf. Lang v. Pennsylvania Higher Educ. Assistance Agency*, 201 F. Supp. 3d 613, 625-26 (M.D. Pa. 2016) ("It is reasonable to infer that the *Fitchik* factors are somewhat time-bound"). Accordingly, the Court will analyze the State Colleges Statute—in addition to other relevant considerations under *Maliandi*—to determine whether Kean was an "arm of the state" prior to the enactment of the Act.[7] *See Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.,* 765 F. App'x 802, 804 (3d Cir. 2019) (finding Ramapo an arm of the state guided by *Maliandi* decision); *Messina v. Coll. of New Jersey*, 624 F. Supp. 3d 523 (D.N.J. 2022) (same for the College of New Jersey).

### a. Funding Factor

---

[6] Plaintiff argues that the Kean Defendants' 12(b)(1) motion constitutes a facial attack, and as such, this Court cannot perform an "arm of the state" analysis until more facts are obtained through discovery. Kean Opp. Br. 18. However, the Third Circuit has previously performed an "arm of the state" analysis of the State Colleges Statute on a facial attack at the Rule 12(b)(1) stage. *See Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 765 F. App'x 802, 805-06 (3d Cir. 2019) (holding Rule 12(b)(1) motion to be a facial attack and reversing district court's decision to delay "arm of the state" analysis until summary judgment). Accordingly, while the Kean Defendants' motion can be characterized as a facial attack, the Court is not precluded from proceeding with its analysis at this juncture.

[7] Contrary to Plaintiff's assertions, we are not bound by this Court's conclusion in *Sharp v. Kean Univ.*, No. CIV. 2:14-423 WJM, 2014 WL 6908775, at *4 (D.N.J. Dec. 8, 2014) that Kean failed to make a sufficient showing of sovereign immunity at the motion to dismiss stage. Kean Opp. Br. 22-24. *Maliandi*, which was published after *Sharp* in 2016, provides a controlling and comprehensive analysis of the same statutes analyzed in *Sharp*.

First, the funding factor has three subfactors: "(1) a State's legal obligation to pay a money judgment entered against the alleged arm of the State; (2) alternative sources of funding (*i.e.*, monies not appropriated by the State) from which the entity could pay such judgments; and (3) specific statutory provisions that immunize the State from liability for money judgments." *Maliandi*, 845 F.3d at 86. Regarding the first subfactor, New Jersey law contains no "all-encompassing" legal obligation on the State to pay for judgments entered against colleges except for limited circumstances. *Id.* at 87. Second, Kean derives only 24.5 to 32 percent of its revenues from 2016 to 2020[8] and has minimal constraint over the State's funds once allocated to them. *Id.* at 87-90 (citing N.J.S.A § 18A:64–6(e), (f); § 18A:64-18.1(b)). However, the State is only immunized from the liability of schools governed by the State Colleges Statute in limited circumstances. *Id.* at 90. Despite this third subfactor counseling towards finding Kean an arm of the state, it is outweighed by the first two, and thus, the "Finding Factor" cuts against finding Kean as an arm of the state.

### b.  Status under State Law Factor

Second, in analyzing MSU's "status under state law," the *Maliandi* Court held that although MSU could own land, this second *Fitchik* factor pointed toward immunity because MSU could not sue and be sued in its own name, was immune from state taxes, could exercise the power of eminent domain, and generally was subject to New Jersey administrative procedure and civil service laws. *Id.* at 96. The same considerations apply to Kean. While Kean can own land, N.J.S.A. § 18A:64-6(q), it can exercise the power of eminent domain, N.J.S.A. § 18A:64-6(l), is generally subject to New Jersey administrative procedure and civil service laws, N.J.S.A. § 18A:3B-6(f); § 18:64-6(i), and its employees benefit from state health care and pension programs, N.J.S.A. § 18A:66-170. Further, the State Colleges Statute has no explicit grant of authority for a state college to sue and be sued in its own name, and "make[s] clear that, in the normal course, colleges [subject to the statute] are treated for litigation purposes like any state agency and thus may not sue and be sued under New Jersey law." *Maliandi*, 845 F.3d at 94 (citing N.J.S.A. § 18A:3B-6(h)). Additionally, Kean is immune from state taxation. *Id.* at 95 ("MSU and other state colleges are immune from state taxes[.]"). On balance, Kean's status under state law points in favor of immunity.

### c.  Autonomy Factor

Third, Kean's restricted autonomy under the State Colleges Statute favors immunity. The autonomy factor focuses "on the entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Id.* at 96. Under the State Colleges Statute, "[a]ll members of the Board of Trustees are appointed by the

---

[8] *See* Kean University, Report on Financial Statements Years Ended June 30, 2020 and 2019, https://www.kean.edu/media/financial-statement-2020; Kean University, Report on Financial Statements Years Ended June 30, 2017 and 2016, https://www.kean.edu/media/fy-2017-financial-statement. We take judicial notice of Kean's financial documents as "public documents." *Maliandi*, 845 F.3d at 89 n.10.

6

Governor and confirmed by the state senate for six-year terms, from which they are removable for cause." *Id.* at 97 (citing N.J.S.A. § 18A:64-3). "In addition, the Governor is statutorily designated as the public 'employer' of all college employees, which vests him with the sole power to collectively bargain on their behalf." *Id.* (citing N.J.S.A. § 18A:64-21.1). Additionally, the Secretary of Higher Education, a member of the Governor's cabinet, is responsible for master education plans and decisions, licensing and accreditation, ethics rules, budgeting, and issuing regulations. N.J.S.A. §§ 18A:3B-14, -15. With the Governor, the Secretary may also review colleges' operations and legal compliance. N.J.S.A. § 18A:3B-34. Further, colleges under the State Colleges Statute must comply with a number of restrictions under the Administrative Procedure Act, the State College Contracts Law, and the civil service laws. *Maliandi*, 845 F.3d at 98 (citing N.J.S.A. § 18A:3B–6(f) and § 18A:64-6(h), (k), (w), (x)). The colleges are further subject to "significant reporting requirements and rules for internal governance" under the statutory code. *Id.* (citing N.J.S.A. § 18A:3B–6(l), -35, -39, -48 to -51; and § 18A:64-6(d)). While the Board of Trustees have some independence and the schools under the State Colleges Statute "bear[] some hallmarks of an autonomous entity," the *Maliandi* Court was not persuaded that these attributes outweighed the "indicia of state control." *Id.* at 98-99 & nn. 24-25. Following the considerations outlined in *Maliandi*, the Court finds that the autonomy factor weighs in favor of finding Kean as an arm of the state.

Because "two of the three co-equal *Fitchik* factors tip in favor of finding that [Kean] is an arm of the state, it is entitled to sovereign immunity, as are its officers in their official capacities." *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.,* 765 F. App'x 802, 808 (3d Cir. 2019).

## ii. *Ex Parte Young Doctrine*

The Individual Kean Defendants next maintain that Plaintiff's claims for injunctive relief against them in their official capacities are also immune under the Eleventh Amendment and do not fall into one if its exceptions—the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). Kean Mov. Br. 16. "Under this doctrine, a suit against a state officer seeking prospective relief designed to end a continuing violation of federal law is not barred by the Eleventh Amendment under the theory that the action is not against the state because the alleged violation of federal law strips the officer of his official authority." *Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 412 (M.D. Pa. 2008) (citing *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002)). However, "[t]he Eleventh Amendment strictly bars suits in federal court against state agencies or state officials for violations of state law, and the *Ex Parte Young* doctrine is inapplicable to such claims." *Id.* at 415 (first citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 105-06 (1984); and then citing *Hess,* 297 F.3d at 325); *see also Torrey v. New Jersey*, No. CIV.A. 13-1192, 2014 WL 941308, at *14 (D.N.J. Mar. 11, 2014) (holding that the jurisdictional limitation recognized in *Pennhurst* does not apply to individual capacity claims). "In determining whether the *Ex Parte Young* doctrine avoids an Eleventh

7

Amendment bar, the Supreme Court has made it quite clear that a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Hess*, 297 F.3d at 324 (quotation marks omitted) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). In determining whether the requested relief falls within the *Ex Parte Young* exception, "we look to the substance rather than to the form of the relief sought[.]" *Papasan v. Allain*, 478 U.S. 265, 279 (1986).

For all of Plaintiff's claims against the Kean Defendants, she seeks injunctive relief that Kean either (1) provide her with four years full-time pension credit with managerial status salary and free lifetime healthcare benefits; or (2) promote her to the position of a full-time professor for four or more years at the Toms River campus. *See generally* Compl.; Kean Opp. Br. 25. Plaintiff's first option—full-time pension credit and salary with healthcare benefits—"is in practical effect indistinguishable in many aspects from an award of damages against the State." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). Because the payment for the pension, salary, and healthcare benefits would be paid by Kean, and not the Individual Kean Defendants, the requested relief "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action." *Id.* As such, this relief is barred by the Eleventh Amendment. Plaintiff argues that her second option—promotion to full professor for four years—constitutes prospective relief under *Ex Parte Young* because several courts, including the Third Circuit, have held that injunctive relief for reinstatement is permissible under the doctrine. Kean Opp. Br. 26; *see, e.g.*, *Melo v. Hafer*, 912 F.2d 628, 637 (3d Cir. 1990). However, Plaintiff seeks a promotion to a full-time professorship for four years—not reinstatement. Unlike a reinstatement to her previous position that would remedy an ongoing unlawful discharge, Plaintiff seeks a position that is unrelated to the alleged violation and appears to be compensatory for a past harm. *Cf. Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). Additionally, Plaintiff's requested promotion for a four-year duration suggests that the relief "is measured in terms of a monetary loss resulting from a past breach of a legal duty" rather than an ongoing one. *Edelman*, 415 U.S. at 668. Thus, this requested injunctive relief asserted against the Individual Kean Defendants in their official capacities is not subject to the *Ex Parte Young* doctrine and is barred under the Eleventh Amendment.

However, on her facial First Amendment claim (Count I), Plaintiff seeks prospective relief for a declaratory judgment stating that the State Workplace Policy is facially unconstitutional and hereafter unenforceable. Compl. at 18. This request for prospective declaratory relief against the Individual Kean Defendants in their official capacities is permissible under *Ex Parte Young* and is not barred under the Eleventh Amendment.

In sum, Kean—and the Individual Kean Defendants in their official capacities—are entitled to Eleventh Amendment immunity. Counts I, II, VI, VII, and VIII as asserted against Kean are **DISMISSED** without prejudice for lack of subject matter jurisdiction.

Likewise, Counts I (to the extent it seeks non-declaratory relief), II, VI, VII, and VIII, as asserted against the Individual Kean Defendants in their official capacities, are not subject to the *Ex Parte Young* doctrine and are thus **DISMISSED** without prejudice for lack of subject matter jurisdiction. Count I, to the extent it seeks declaratory relief against the Individual Kean Defendants in their official capacities, is subject to the *Ex Parte Young* doctrine and is not barred under the Eleventh Amendment.

### 2. Qualified Immunity

The Individual Kean Defendants next argue that they are entitled to qualified immunity in their individual capacities. Mov. Br. 17. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paladino v. Newsome,* No. CIV. 12-2021, 2013 WL 3270987, at *8 (D.N.J. June 27, 2013) (citing *Pearson v. Callahan,* 555 U.S. 223 (2009)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations and quotation marks omitted). "To determine whether a government official is entitled to qualified immunity, we ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether that right was clearly established at the time of the violation." *Bag of Holdings, LLC v. City of Philadelphia*, 682 F. App'x 94, 96 (3d Cir. 2017) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). However, the Court need not undertake the inquiry in that order. *Id.* (citing *Pearson*, 555 U.S. at 235-36). "For a right to be *clearly established*, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Otero v. Port Auth. of New York & New Jersey*, No. CV141655, 2021 WL 3879092, at *16 (D.N.J. Aug. 30, 2021) (emphasis in original) (quotation marks omitted) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 762 (3d Cir. 2019)). Accordingly, the Court will review whether the Individual Kean Defendants are entitled to qualified immunity on each of Plaintiff's § 1983 claims asserted against them.

#### i. *First Amendment (Count I)*

In her Complaint, Plaintiff raises a facial challenge against the State Workplace Policy, alleging that it is "facially unconstitutional for three reasons: (1) it is neither content nor viewpoint neutral; (2) many of its provisions are unconstitutionally vague; (3) many of its provisions are unconstitutionally overbroad." Compl. ¶ 61. She notes that the policy is "so permeated with unconstitutional provisions that it is unconstitutional in its entirety and unenforceable." *Id.* Then, citing generally to seven U.S. Supreme Court, Third Circuit, and state supreme court cases, Plaintiff asserts that "[t]he unconstitutionality of the Policy was clearly established by numerous legal precedents many years before the events giving rise

to this lawsuit occurred." *Id.* ¶ 62. Plaintiff concludes that as such, the determination that she had violated the State Workplace Policy was therefore itself an unconstitutional and invalid determination. *Id.* ¶ 64. Plaintiff does not allege any specific facts about the State Workplace Policy's provisions in her Complaint, but she does attach a copy of the six-page policy as an exhibit. Compl. Ex. 1. Plaintiff does not elaborate on her claims in her opposition brief and instead cites generally to additional caselaw in support of her legal conclusions. Kean. Opp. Br. 29-30.

Because the qualified immunity inquiry must be undertaken in light of the specific context of the case, and not as a broad general proposition, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), the Court **denies** the Individual Kean Defendants' claim for qualified immunity without prejudice at this juncture. *See Collick v. William Paterson Univ.*, 699 F. App'x 129, 131 (3d Cir. 2017). However, because Plaintiff's claim amounts to little more than a "formulaic recitation of the elements of a cause of action" and legal conclusions, it is not sufficient to state a claim under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("The District Court . . . may disregard any legal conclusions."). As such, Count I is **DISMISSED** without prejudice under Rule 12(b)(6) for failure to state a claim.

ii.  *Due Process (Count II)*

In Count II of her Complaint, Plaintiff alleges that the Kean Defendants violated her right to both substantive and procedural due process.

a.  *Substantive Due Process*

Plaintiff first alleges that the Kean Defendants violated her right to substantive due process rights under the Fourteenth Amendment because she was "penalized for actually performing the job she was hired to perform[.]" Compl. ¶ 67. "The law is clear that in order to state a claim for violation of substantive due process rights, a plaintiff must prove (1) 'the particular interest at issue is protected by the substantive due process clause' and (2) 'the government's deprivation of that protected interest shocks the conscience.'" *Lenni-Lenape v. Lougy*, No. CV 15-5645, 2016 WL 6393802, at *13 (D.N.J. Oct. 27, 2016) (quoting *Lear v. Zanic*, 524 F. App'x. 797, 801-802 (3d Cir. 2013)). Plaintiff admits that she does not have a property interest in her continued employment, but instead asserts that "she had a liberty interest under the 14th Amendment which entailed that she could not be disciplined for actually performing the requirements of her job as a professor teaching business law[.]" Compl. ¶ 66. Plaintiff specifies in her opposition brief that because the comments she made that led to her termination related to her explanation of business law, she was "terminated for doing precisely what she had been hired to do – teach business law." Kean Opp. Br. 36. Citing generally to *Grant v. City of Pittsburgh*, 98 F.3d 116 (3d Cir. 1996), which discusses due process in the context of a dispute between city officials and property developers, she submits that "firing a public employer for doing exactly what

10

the employee was hired to do constitutes arbitrary and capricious conduct that violates substantive due process." Kean Opp. Br. 36.

The Court finds that the liberty interest alleged by Plaintiff is not "clearly established" such that it would put the Individual Kean Defendants on notice that Plaintiff's rights were being violated. The Court has not been alerted to any decisional law finding a liberty interest in being free from discipline while performing a job. To the contrary, the Third Circuit has "held explicitly that public employment is not a fundamental right entitled to substantive due process protection." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006). Sister circuits have similarly "refused to allow discharged public employees to proceed with substantive due process claims against their former employers[.]" *Singleton v. Cecil*, 176 F.3d 419, 427 (8th Cir. 1999) (collecting cases and declining to hold that "occupational liberty" is sufficiently fundamental to qualify for substantive due process protection). To the extent Plaintiff's asserted liberty right relates to reputational injury, it also fails to state a cognizable interest. *See Hill*, 455 F.3d at 234 n.12. Thus, the Individual Kean Defendants are entitled to qualified immunity on this claim.

### b. Procedural Due Process

Plaintiff next alleges that the Kean Defendants violated her right to procedural due process under the Fourteenth Amendment. "When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, we employ the familiar two-stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (citation and quotation marks omitted).

Plaintiff first maintains that the Kean Defendants violated her liberty interest in the ability to pursue her chosen occupation.[9] Kean Opp. Br. 39. In her Complaint, Plaintiff alleges that "she applied for numerous other positions, including teaching positions, for which she was qualified, without success" and that she "believe[d] that her failure to be hired for these positions is attributable to her having been abruptly terminated from her teaching position at Kean midway through the semester." Compl. ¶ 50. In her Opposition Brief, Plaintiff contends that this "allegation reasonably implies . . . that her termination by Kean *caused* the job denials, thereby 'depriv[ing] her of the right to pursue [her] chosen profession' and thereby adversely affecting her liberty interest under the 14th Amendment." Kean Opp. Br. 39 (emphasis added). While it is clearly established that "[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments[,]" *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1259 (3d

---

[9] Plaintiff acknowledges that she does not have a property interest in her continued employment. Kean Opp. Br. 37.

11

Cir. 1994) (citing *Greene v. McElroy,* 360 U.S. 474, 492 (1959)), Plaintiff pleads no facts that permit a reasonable inference that "the decision not to rehire [her] was, in fact, based on [her] free speech activities." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 574-75 (1972). Plaintiff's allegation amounts to nothing more than speculation, and she has not shown deprivation of a liberty interest in her employment.

Additionally, Plaintiff has not shown that she was not afforded procedures that gave her due process of law. Plaintiff asserts that "because she was never informed prior to her abrupt removal from teaching her class precisely what infraction she was accused of committing," her right to notice was violated. Compl. ¶ 69. She also states that she was not "given an opportunity to be heard at a meaningful time, and in a meaningful manner, thereby violating her liberty interest[.]" *Id.* However, in *Roth*, 408 U.S. at 569, the Supreme Court held that an assistant professor who was hired for a fixed term of one academic year without any promise of continued employment did not have "a constitutional right to a statement of reasons and a hearing on the University's decision not to rehire him for another year." Accordingly, the facts alleged by Plaintiff fail to show a violation of her procedural due process rights and the Individual Kean Defendants are entitled to qualified immunity on this claim.

Finding that the Individual Kean Defendants are entitled in their individual capacities to qualified immunity on Count II, this claim is **DISMISSED** without prejudice.

### B. Claims Against Defendant Myers

The Court will now assess Plaintiff's claims against Defendant Myers. Count III alleges that Defendant Myers violated Plaintiff's procedural due process rights under the Fourteenth Amendment by informing the ALJ that the Commission did not have jurisdiction over the appeal. *Id.* ¶¶ 70-76. Count IV alleges that Defendant Myers's conduct violated her right to equal protection under the Fourteenth Amendment by excluding adjunct professors from the right to appeal State Workplace Policy violations. *Id.* ¶¶ 77-79. Count V alleges that Defendant Myers engaged in a civil conspiracy with unidentified individuals. *Id.* ¶¶ 80-89. Counts VII and VIII of Plaintiff's Complaint, like they did against the Kean Defendants, allege that Defendant Myers violated the analogous provisions of the New Jersey State Constitution and subjected Plaintiff to intentional infliction of emotional distress. *Id.* ¶¶ 93-97.

#### 1. Eleventh Amendment Immunity

Defendant Myers first argues that all of Plaintiff's claims against her in her official capacity are barred under the Eleventh Amendment. Myers Mov. Br. 9-10. Plaintiff argues that because she is a citizen of New Jersey and not a citizen of another state or any foreign state, "the plain, unambiguous language of the [Eleventh] Amendment should not preclude this Court from exercising jurisdiction over her lawsuit." Myers Opp. Br. 1-2. The Eleventh

12

Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (citing, among other cases, *Hans v. Louisiana*, 134 U.S. 1 (1890)). In response to this precedent, Plaintiff argues that *Hans* should be overruled. Myers Opp. Br. 3-5. However, only the Supreme Court may overrule one of its precedents. *See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983). Thus, this Court is bound by *Hans* and finds that Defendant Myers is entitled in her official capacity to Eleventh Amendment immunity on Counts III, IV, V, VII, and VIII.[10] *See Chee-Wah v. Maurer*, 663 F. App'x 194 (3d Cir. 2016) (barring claims against Civil Service Commission officers under the Eleventh Amendment). These claims are thus **DISMISSED** without prejudice.

### 2. Qualified Immunity

Defendant Myers next argues that she is entitled to qualified immunity in her individual capacity on each of Plaintiff's three § 1983 claims against her. Myers Mov. Br. 13-15.

#### i. *Procedural Due Process (Count III)*

Plaintiff asserts that Defendant Myers violated her procedural due process rights by "directing the dismissal of Plaintiff's appeal" and claiming that the Commission did not have jurisdiction over it. Compl. ¶ 76. Plaintiff notes that she "detrimentally relied on the Commission's initial position that it did have jurisdiction" by spending money to retain attorneys for the appeal and hearing. *Id.* "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).[11] "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* (citations and quotation marks omitted). Here, Plaintiff was entitled to appeal the Commission's final agency decision to the Appellate Division of the New Jersey Superior Court as of right but did not do so. *See* N.J. Ct. R. 2:2-3(a)(2) (providing for appeal as of right of final decisions by state administrative agencies). Because the facts

---

[10] Plaintiff does not assert ongoing violations of federal law nor seeks prospective injunctive relief against Defendant Myers for *Ex Parte Young* purposes.

[11] "This requirement is to be distinguished from exhaustion requirements that exist in other contexts." *Alvin*, 227 F.3d at 116 (citing *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 516 (1982)).

13

alleged by Plaintiff demonstrate that she did not avail herself of the procedures provided to her by the Commission and Appellate Division, and she has not otherwise alleged that these procedures were otherwise unavailable or patently inadequate, she has not shown a violation of her procedural due process rights. *See Brown v. Camden Cnty. Bd. of Soc. Servs.*, 704 F. App'x 204, 207 (3d Cir. 2017) (holding that because appellant did not appeal the final agency decision at issue to the Appellate Division, "a federal constitutional procedural due process violation . . . did not occur"). Thus, Defendant Myers is entitled to qualified immunity in her individual capacity on this claim.

### ii.   *Equal Protection (Count IV)*

"[T]he Equal Protection Clause of the Fourteenth Amendment requires that similarly situated individuals be treated alike absent a rational basis to distinguish between them." *Bag of Holdings, LLC v. City of Philadelphia*, 682 F. App'x 94, 97 (3d Cir. 2017). Plaintiff argues that the State Workplace Policy violates the Equal Protection Clause because it allows some public employees charged with violating the State Workplace Policy to appeal an unfavorable determination to the Commission while others may not so appeal. Myers Opp. Br. 21. "While it is true that where the right to an appeal is afforded some litigants and capriciously and arbitrarily denied to others, there is a violation of the Equal Protection Clause, identification of differing treatment is only the beginning of an equal protection inquiry." *Mildner v. Gulotta*, 405 F. Supp. 182, 193 (E.D.N.Y. 1975) (citing *Lindsey v. Normet*, 405 U.S. 56, 77 (1972)). "There must be recognition that, in disciplining professionals, the State may legitimately find reason to conclude that differing procedural safeguards are appropriate for different professions." *Id.* The parties do not cite, and the Court has not found, any precedent clearly establishing that a disparity in the rights of public employees to appeal a violation of a workplace anti-discrimination policy amounts to an equal protection violation. And, as *Mildner* demonstrates, Courts have upheld professional classifications in other contexts. Thus, Defendant Myers is entitled in her individual capacity to qualified immunity on Count IV.

### iii.   *Civil Conspiracy (Count V)*

Plaintiff next alleges that Defendant Myers engaged in a civil conspiracy to deprive Plaintiff of her due process rights in violation of 42 U.S.C. § 1983. Compl. ¶ 89. "The elements of a claim of conspiracy to violate federal civil rights are that (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (citation and quotation marks omitted)). Specifically, Plaintiff asserts that Defendant Myers worked in concert with unknown individuals to "*sua sponte*" determine that the Commission lacked jurisdiction to hear Plaintiff's appeal and "short-

circuit[ed] the proper procedure" by directing the ALJ to dismiss the appeal. Compl. ¶¶ 87, 89. Plaintiff appears to argue that because several agencies and institutions agreed with Defendant Myers's determination that the Commission lacked jurisdiction to hear Plaintiff's appeal, she must have conspired with others to improperly "short-circuit" the proper procedure. However, this is based solely on Plaintiff's speculation, as she has failed to allege any facts suggesting that Defendant Myers agreed with, concerted action with, or performed an "overt act" with another entity to violate Plaintiff's rights. *See Jutrowski*, 904 F.3d at 295 (holding that plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action). As such, the facts alleged by Plaintiff fail to show a violation of a constitutional right and Defendant Myers is entitled to qualified immunity in her personal capacity on this claim.

Based on the foregoing, the Court finds that Defendant Myers is entitled in her individual capacity to qualified immunity on Counts III, IV, and V. These claims are thus **DISMISSED** without prejudice.

### C. State Law Claims (Counts VI, VII, VIII)

Finding that all of Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Counts VI through VIII, to the extent that they are asserted against the Defendants in their individual capacities. *Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015) ("A District Court has discretion to 'decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)). As such, they are **DISMISSED** without prejudice.

In sum, the Court makes the following findings:

1. Counts I, II, VI, VII, and VIII asserted against Kean are dismissed for lack of subject matter jurisdiction.

2. Counts I (to the extent it seeks non-declaratory relief), II, VI, VII, and VIII asserted against the Individual Kean Defendants in their official capacities are dismissed for lack of subject matter jurisdiction.

3. Count I, to the extent that it is not barred by the Eleventh Amendment, is dismissed against the Individual Kean Defendants for failure to state a claim.

4. Count II asserted against the Individual Kean Defendants in their individual capacities is dismissed pursuant to qualified immunity.

5. Counts III, IV, V, VII, and VIII asserted against Defendant Myers in her official capacity are dismissed for lack of subject matter jurisdiction.

6. Counts III, IV, and V asserted against Defendant Myers in her individual capacity are dismissed pursuant to qualified immunity.

7. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Counts VI, VII, and VIII, to the extent they are asserted against the Individual Kean Defendants and Defendant Myers in their individual capacities.

Accordingly, all of Plaintiff's claims in her Complaint, ECF No. 1, are **DISMISSED** without prejudice.

## V.     CONCLUSION

For the foregoing reasons, the Kean Defendants' motion to dismiss, ECF No. 28, and Defendant Myers's motion to dismiss, ECF No. 29, are **GRANTED**.

An appropriate Order accompanies this Opinion.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 15, 2024**