## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHERYL BOROWSKI, ESQ. :

  Plaintiff :

  v. : Civil Action No.: 2:20-cv-05172-WJM-MF

KEAN UNIVERSITY; :
DAWOOD FARAHI, Ph.D.,
in his official and individual capacities; :
CHARLES WILLIAMS, Ph.D.,
in his official and individual capacities; :
STEPHEN KUBOW,
in his official and individual capacities; :
KENNETH GREEN, Esq.,
in his official and individual capacities; :
FARUQUE CHOWDHURY, ,
in his official and individual capacities; :
CHRISTOPHER MYERS,
in his official and individual capacities, :

  Defendants :

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**NOW COMES** Cheryl R. Borowski, former Adjunct Professor at Kean University, a public University of the State of New Jersey, pursuant to the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, seeking declaratory and injunctive relief and pursuant to the Court's Order allowing Plaintiff to file an Amended Complaint regarding Count I, ECF No. 47, and states:

## INTRODUCTION

This lawsuit involves the violation of the constitutional rights of Cheryl Borowski, a former Adjunct Professor at Kean University ("Kean" or "University"), a public university of the State of New Jersey. Borowski is a licensed attorney in New Jersey and had been employed as an

Adjunct Professor by Kean to teach a course in business law to undergraduate students enrolled at Kean. She had been teaching the course every year for 5 years when, in 2016, Borowski was accused of violating the New Jersey Policy Prohibiting Discrimination In The Workplace ("Policy"). It was alleged that Borowski had made inappropriate remarks relating to gender, religion, national origin and ethnicity while teaching in her class. She was abruptly removed from the class on March 29, 2016, while she was in the process of teaching and was never allowed to return. Although the University continued to pay Borowski her salary for the remainder of the term, her contract was not renewed for the 2016-2017 school year.

The Policy is facially unconstitutional because it is not content or viewpoint neutral, and is defectively vague and overbroad. Since the Policy is unconstitutional, Borowski could not be disciplined for allegedly violating an unconstitutional policy and any adverse employment action taken against her was unconstitutional.

Borowski appealed her termination on the alleged basis that she had violated the Policy to the New Jersey Civil Service Commission ("Commission"). Due to continuances which were requested by the University, a hearing in Borowski's appeal did not commence until June 14, 2018. After the hearing was concluded following three days of testimony before an Administrative Law Judge, and the parties were in the process of preparing their final briefs, New Jersey Attorney General Gurbir Grewal sent a letter, written by then Deputy Attorney General Marolhin Mendez, to the ALJ directing her to dismiss the appeal, on the basis that Christopher Myers, Director of the Commission, had informed the Attorney General that the Commission did not have jurisdiction to hear appeals by Professors or Adjunct Professors employed by public universities in New Jersey, because they were not covered by Title 11A, the New Jersey Civil Service Act. The ALJ accordingly dismissed the appeal. The dismissal was

affirmed on appeal to the Commission.

Myers' position that the Commission did not have jurisdiction to hear Borowski's appeal was contrary to the plain, unambiguous language of the appellate procedure regulations contained in the Policy, and also violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

By imposing an adverse employment action on Borowski based on alleged violations of the unconstitutional Policy, the University violated Borowski's right to free speech under the 1st Amendment. It has also violated her liberty interest under the 14th Amendment by removing her from her class and terminating her contract without affording her procedural due process. The Commission has violated Borowski's statutory and constitutional rights by dismissing her appeal in violation of the Commission's own regulations and in violation of the Equal Protection Clause of the 14th Amendment.

## JURISDICTION AND VENUE

1.      This action arises under the First and Fourteenth Amendments of the United States Constitution and is brought pursuant to U.S.C. 42 §§1983 and 1988.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343, and supplemental jurisdiction over the New Jersey state law claims under.28 U.S.C. §1367(a).

3.      Venue is proper in the District of New Jersey under 28 U.S.C. §1391 because the events giving rise to the claims detailed herein occurred in the District of New Jersey.

## PARTIES

4.      Plaintiff Cheryl Borowski is a licensed attorney in New Jersey and a former Adjunct Professor at Kean. Borowski taught a business law course at the Toms River campus of Kean. Borowski resides in New Jersey.

5.    Kean University ("Kean" or "University") is a public university of the State of New Jersey, with its main campus located in Union, New Jersey.

6.    Dr. Dawood Farahi is the President of Kean.

7.    Dr. Charles Williams was the Director of Affirmative Action Programs at Kean during the relevant time period.

8.    Stephen Kubow is the Acting Associate Vice President of Kean.

9.    Mr. Kenneth Green is the Chief Labor Counsel for Kean.

10.    Faruque Chowdhury is the Director of Human Resources at Kean.

11.    Christopher Myers is the Director of the New Jersey Civil Service Commission.

**FACTUAL ALLEGATIONS**

12.    In 2016, Plaintiff Cheryl Borowski, a licensed attorney in New Jersey, was employed as an Adjunct Professor at Kean, where she taught a course in business law to undergraduate students enrolled at Kean. She had taught the course for 5 years.

13.    At the beginning of every class term, Plaintiff would explain her teaching methodology to the students. Plaintiff's method was to play the role of a devil's advocate in which she expressed opinions regarding various legal issues bearing on business law which were controversial, and which were not necessarily her own opinions. Plaintiff's method was intended to promote critical thinking by the students. The comments reflected debate points which were suggested for discussion in the textbook which Plaintiff was using. The opinions were selected to represent opinions about legal issues which were held by individuals in the business community and were intended to motivate the students to think of rebuttal arguments to counter the opinions. Plaintiff would propose, for example, that it was acceptable for an employer to terminate a pregnant employee because a pregnant woman is not as productive as a male employee. Using

4

the facts from a Supreme Court decision, <u>International Union v. Johnson Controls, Inc.</u>, for example, Plaintiff would ask the students whether it was acceptable for an employer to refuse to hire pregnant women in order to protect them from the toxic effects of exposure to lead contained in products used in the workplace. Many of the opinions implicated issues that were the subject of existing law. For example, Plaintiff would offer that in order for an individual who is not an American citizen to work in the United States, the individual would have to possess a green card, which is an accurate statement of immigration law.

14.     On March 15, 2016, Plaintiff received an email from Kubow indicating that he and Assistant Dean David Farrokh wished to meet with her the following Tuesday, March 22, after her class.  The email stated, in relevant part: "We have been approached by several students in you class who have raised concerns that we would like to discuss with you.  Please confirm your availability at this time, since Mr. Farrokh will be traveling here from the Union campus."

15.     Plaintiff responded by email on March 21, indicating that, because she had a previously scheduled engagement, she would be unable to attend the meeting, but that a union representative would attend in her stead.

16.     Unfortunately, the union representative who was supposed to attend the meeting in Plaintiff's stead was unable to do so because she had gone to see her physician and the appointment with the physician took longer than was anticipated. When she arrived at the meeting, the union representative was informed that Farrokh had referred the matter to the Human Resources Dept.

17.     On March 29, 2016, Defendant Kubow came into Plaintiff's classroom at the conclusion of the class and asked her to step outside. Kubow then informed Plaintiff that she was being removed from the class. Plaintiff was not told why this action was being taken and she was

never allowed to return to her class.

18.    Later that day, Kubow sent Plaintiff an email stating:

Thank you for taking time to speak with me today. I just wanted to confirm the content of our conversation. As I stated, your services in the class will no longer be required after today. You will be fully compensated for the entire teaching of the course. We do request you submit your gradebook/grade file or other record of student work, as well as any student papers, etc. that you may still have to GATE 103 as soon as possible. Any other questions can be directed to HR or the Dean's Office in Union. Thank you for your past service to Kean.

19.    On March 30, 2016, Plaintiff sent an email to Chowdhury and Kubow, stating:

Per my conversations with Dr. Chowdhury and Dr. Kubow late yesterday afternoon, neither Dr. Chowdhury nor Dr. Kubow would answer my question regarding why you fired me. Dr. Chowdhury said to send an email to Dr. Chowdhury and Dr. Kubow with questions I have.

Why did you fire me yesterday? I've done nothing wrong.

Dr. Chowdhury said there are allegations. What are the allegations? Who made the allegations? When were these allegations made?

Dr. Chowdhury said there is an investigation. What is the subject of the I nvestigation? What are you investigating? What questions are you asking? Why is there an investigation? To whom are you asking questions?

Please advise.

20.    Later, on March 30, 2016, Chowdhury responded to Plaintiff by email, stating:

This is in response to email regarding you teaching responsibilities. As I mentioned to you yesterday, your employment was not terminated. [This, despite Kubow's statement in his email, "[Y]our services in the class will no longer be required after today. You will be fully compensated for the entire teaching of the course."] The University is initiating an administrative process based on numerous concerns raised by students in your class. These concerns involve your teaching effectiveness of which some may implicate the New Jersey State Policy Prohibiting Discrimination in the Workplace. While this matter is being reviewed, it was determined that an alternate assignment for the course was necessary.

You will be contacted within the next two weeks regarding the administrative process and the allegations reported by students.

21.    Plaintiff responded to Chowdhury's email that same day, stating:

> Just to be clear and with all due respect, there is an error in your email sent to me this morning. Specifically, yesterday you did not say I wasn't terminated. In fact, when I asked you why I was fired, you said that you did not know why I was fired.
>
> You said somebody made allegations. I asked who. You said you did not know. I asked what allegations. You said you did not know. Then you said there was an investigation going on, but you did not know what they were investigating. You said I would be paid for the remainder of the course, and somebody would b replacing me. I asked who. You said, why did I want to know that?

22.    On May 2, 2016, Defendant Williams sent Plaintiff a letter which, for the first time, explained why she had been taken out of her classroom. Williams stated, in relevant part:

> I am writing to inform you that you have been named as a respondent in a complaint alleging a violation of the *New Jersey State Policy Prohibiting Discrimination in the Workplace.* (State Policy). Multiple students enrolled in your Spring, 2016 Business II class at Ocean County College have attributed comments and/or references by you that implicated the State Policy. Specifically, the students reported that you made remarks during the course that were offensive and included references to the following: gender (sex), immigration status, nationality/ethnicity, and religion.

Enclosed with the letter was a copy of the Policy (Exhibit 1, attached) and applicable Model Procedures.

23.    On May 18, 2016, an attorney representing Plaintiff sent a letter to Kean, addressed to Williams and Chowdhury, indicating that they were willing to cooperate fully in any investigation Kean was conducting with respect to the unknown allegations which prompted Kean to suspend Plaintiff from her teaching assignment. Her attorney indicated that the suspension had occurred without Kean even interviewing Plaintiff or providing her with any details regarding what she was accused of having done which warranted Kean's disciplinary action. The attorney accused Kean of violating Plaintiff's due process rights and harming her

reputation in the Kean community. Her attorney did not receive a response to his letter from Kean.

24.     On June 9, 2016, Plaintiff filed an Initial Notice of Claim for Damages Against the State of New Jersey with the New Jersey Department of the Treasury, Bureau of Risk Management.

25.     On July 18, 2016, Williams sent a letter to Plaintiff in which he summarized and quoted allegations by several students accusing Plaintiff of expressing negative statements about immigrants, homosexuals and people of color, and espousing conventional gender role views regarding women. He closed the letter indicating that Kean had initiated an investigation of the students' allegations and asked for Plaintiff to provide a response to the allegations.

26.     On August 5, 2016, Plaintiff's attorney sent a letter to Green indicating that Plaintiff denied all of the allegations made by the students referred to in Williams' July 18 letter and requested that Green provide sufficient materials so that she could respond to the allegations.

27,     On August 11, 2016, Green sent Plaintiff's attorney an email, which stated:

> I am in receipt of your correspondence dated August 5, 2016. Please be advised that your client is being investigated for alleged violations of the State Policy Prohibiting Discrimination. She nor you do not dictate [*sic*] how Kean University fulfills its legal obligations in this regard. Your client has been provided notice to speak with the Affirmative Action Officer and it is expected that she will cooperate.
>
> As to Ms. Borowski's employment status, her contractual relationship with the University ahs concluded and she has been paid in full for her services. As an adjunct, she has no "position for the fall".
>
> As to the processing of the grievances, your client and/or the Union have the right to proceed to arbitration within the time limitations provided within the contract after the passage of a certain period of time. You should confer with your client and/or the Union as why she/they has not exercised the right.
>
> Please be guided accordingly.

28.     On September 14 and 15, 2016, Plaintiff emailed lengthy documents to Williams rebutting each of the allegations made against her and noting that the students who filed the complaints misunderstood her teaching methodology, which she had explained at the beginning of the course, by mistaking the opinions she offered as a devil's advocate as being her own opinions.

29.     On October 6, 2016, Audrey M. Kelly, Chief of Staff for the Office of the President, sent Plaintiff a letter, which stated, in relevant part (Exhibit 2):

> The Office of Affirmative Action Programs (OAAP) notified you of concerns reported by students in your Business Law II course during the Spring, 2016 semester by letter dated May 2, 2016 and July 18, 2016. You submitted emails on September 14, 2016 and September 15, 2016 detailing your concerns abut the investigation process, veracity of the students' complaints, and concerns about the University's review of this matter pursuant to the New Jersey State Policy Prohibiting Discrimination in the Workplace (State Policy).

> The OAPP investigation reviewed unsolicited documentation and information that was provided by students in your Business II class. After receiving initial complaints from several students, the OAAP contacted other students in your class. Most of the students contacted corroborated the initial complaints by students that you made gender-based remarks, comments about religion, and comments about national origin and ethnicity. Despite your assertion that your discussions were "debate points" and constituted "free speech" and "academic freedom," the information provided does not support a connection to your repeated comments with the course's academic content. Rather, based on the information available, your comments that implicated the State Policy were more likely than not expressions of your personal feelings and beliefs.

> The Office of Affirmative Action Programs has completed its investigation of this matter, and this letter is the final determination by Kean University. Based on a review of the testimony and the information provided by students in your class, your comments were not associated with the course's academic content. Based on the State Policy's zero tolerance threshold, the comments that you made during the course that implicating [*sic*] the policy, i.e., gender, national origin, religion, and ethnicity constituted a policy violation. Since the State Policy is a zero tolerance policy, derogatory or demeaning references associated with a protected category in the State Policy, regardless of intent, may constitute a violation of the policy. The investigation revealed other concerns raised by students that involved teacher effectiveness and teaching methods for the course. These concerns will be

9

referred to the appropriate office.

. . .

If you wish to appeal this determination, you must submit a written appeal to the New Jersey Civil Service Commission, Division of Merit System Practices and Labor Relations, Written Record Appeals Unit, P.O. box 312, Trenton, NJ 08625-0312, postmarked or delivered within 20 days of your receipt of this determination. Your appeal must include a copy of this determination, the reason for the appeal and the specific relief requested. ...

30. On October 21, 2016, Plaintiff filed a timely appeal with the Commission, per the instructions in Ms. Kelly's letter. (Exhibit 3, attached, minus attachments.)

31. On November 10, 2016, Walker Ristau, Personnel and Labor Analyst for the Commission, sent a letter to Plaintiff and Williams indicating that Kean's response to Plaintiff's appeal "must be filed with this office, with copies to the appellant and the Director of EEO/AA, within 20 calendar days of receipt of this letter." Assuming that Kean received Ristau's letter by November 15, 2016, Kean had until December 5, 2019, to file its response to Plaintiff's appeal.

32. On December 6, 2019, after Kean's response was already due, Williams sent a letter to Ristau, copied to Plaintiff, confirming that Kean had been granted an extension of the deadline for filing its response until January 12, 2017, a total of 52 days after Plaintiff had filed her appeal. The extension was granted without Kean having filed a motion to extend the due date for its response, and without having notified Plaintiff that an extension had been requested.

33. On January 23, 2017, Plaintiff sent Ristau an email, stating:

> I have not received any information from Kean nor from you. <u>The extended deadline of January 12, 2017 by which Kean was required to submit information expired 12 days ago</u>.
>
> Would you please advise regarding the status of my appeal? Thank you for your attention to this matter.

(Underscoring in the original.)

34. On January 23, Ristau responded to Plaintiff's email by stating:

> You won't receive any information from the Commission until a decision has been rendered. I will have to check the file to see if anything has been received from Kean, but I do recall having received something. Our office is being remodeled right now and your file is in a box somewhere. Once I find it, I will get back to you.

35.    Upon information and belief, in its response to Plaintiff's appeal Kean requested that the appeal be dismissed.

36.    On June 21, 2017, the Commission issued an Order denying Kean's request that Plaintiff's appeal be dismissed, stating, in relevant part:

> [M]aterial disputes of fact exist which warrant granting a hearing at the Office of Administrative Law (OAL) with regard to the appellant's appeal of the finding that she violated the State Policy. Kean contends that the complained of comments were unrelated to the course content and therefore are not protected by academic freedom. The appellant argues that her comments were "debate points" related to the course content and, therefore, protected by academic freedom. Although the appellant provides the course syllabus and lists several instances where her comments could relate to topics covered in the course textbook, the record is unclear whether or not her comments sufficiently relate to the course content and were intended to encourage discussion in class rather than her simply stating her opinions as fact as alleged by the complainants. Under these circumstances, the Commission finds that disputed issues of material facts exist which cannot be determined on the written record, thereby requiring a hearing in the matter where an Administrative Law Judge (ALJ0 may evaluate evidence and assess the credibility of the witnesses. Therefore, the Commission grants a hearing at the OAL on the sole issue specified above.

37.    Former Deputy Attorney General Mendez, representing Kean, requested that the hearings be postponed for several months, claiming that students which Kean wished to call as witnesses were not available to testify because they were still in school. As it turned out, Mendez had prevaricated, because the only student Kean called as a witness had already graduated before the Commission had issued its Order assigning the appeal to be heard by the OAL.

38.    Mendez continued to delay the hearings by manufacturing bogus excuses for postponing the hearings.

11

39.     A pre-hearing conference was not conducted until December, 2017, in Newark, New Jersey.

40.     In February, 2018, Plaintiff learned for the first time the names of the students who had filed complaints about her and what the content of the complaints was.

41.     The hearing was commenced before Administrative Law Judge Elissa Mizzone-Testa on June 14, 2018, and transpired over three days – June 14, June 20 and June 26. During the hearing, Kean was represented by Mendez.

42.     On the final day of the hearing, the parties' attorneys gave closing arguments and arranged with the ALJ to have post hearing briefs filed within 75 days of the last hearing date, allowing 45 days for the preparation of the hearing transcript.   Briefs were then due on September 9, 2018.

43.     On October 4, 2018, Mendez wrote a letter to ALJ Testa, stating that:

> Kean University is in receipt of correspondence from the Director of the Civil Service Commission (CSC) regarding a separate matter that impacts this case. Please see attached letter dated October 1, 2018. In this letter, the Director expressly says adjunct professors are not considered Civil Service employees and therefore do not have the right to appeal a State Policy determination. This directly impacts Borowski's appeal as the CSC does not have jurisdiction to review these matters.
>
> Given this letter, we request this matter be formally withdrawn. Should your Honor need any additional information, please do not hesitate to contact our office.

Mendez copied Myers on the letter.  (Exhibit 4).

44.     The letter Mendez was referring to related to another professor at Kean, Dr. Davida Schuman, who, like Plaintiff, had been charged with violating the Policy. Without a hearing, Dr. Schuman was determined to have violated the Policy and her appeal to the Commission was dismissed by Myers because he maintained the Commission did not have

jurisdiction over appeals by professors charged with violating the Policy. (Exhibit 4)

45.    On October 19, 2018, Myers sent a letter to ALJ Testa. In the letter, Myers asserted that because professors and adjunct professors were removed from the coverage of Title 11A of the New Jersey Statutes, they were not entitled to appeal rulings that they had violated the Policy. Myers made this assertion despite acknowledging that the very terms of the Policy indicate that the provisions of the Policy apply to all employees and applicants for employment of the State. In closing, Myers stated:

> Consequently, as the issue of the Commission's jurisdiction was not raised prior to its review of C.B.'s appeal, the matter of the disputes of material fact was improperly referred to OAL for a hearing. As noted above, the matter of jurisdiction arose in another case before the Commission [*i.e.*, Dr. Schuman's case] and it was determined that certain classes of State College and University employees, such as adjunct professors and professors, were statutorily removed from the provisions of Title 11A effective July 9, 1986. Therefore, since July 2018, the Commission has advised those employees serving in a position not subject to Title 11A that it does not have the jurisdiction to review any type of appeal.

(Exhibit 5)

46.    Based on Mendez's and Myers' letters, by Order dated October 23, 2018, ALJ Testa dismissed Plaintiff's appeal. (Exhibit 6)

47.    On November 2, 2018, Plaintiff's then attorney filed an appeal of the ALJ's dismissal Order with the Civil Service Commission, arguing that the Commission was estopped from denying jurisdiction after the matter had been assigned to an ALJ and the hearing had been concluded.

48.    On November 23, 2018, the Civil Service Commission (CSC) entered an Order affirming the dismissal of Plaintiff's appeal for lack of jurisdiction, stating in relevant part

> [A]s the appellant in this matter was an Adjunct Professor, her appeal to the Commission of the determination made regarding the subject State Policy matter was invalid. The Commission notes that variables such as

13

the fact that its interpretation of the rules above prohibiting such classes of employees the right to appeal discrimination matters to the Commission occurred after the appellant's original appeal, or the fact that other previous appellants may have been afforded such rights, cannot be used as a justification for the continuance of any such appeal. It is clear from the Commission's analysis that such employees do not have the right to appeal discrimination determinations to the Commission and any such appeals permitted previously were allowed in error. Thus, a current appellant cannot assert any estoppel or other rights to such an appeal as no vested or other rights are accorded by an administrative error.

(Exhibit 7)

49. Plaintiff had detrimentally relied on the Commission's prior representation that it had jurisdiction to hear her appeal by retaining the services of three law firms over a period of two years and paying for legal representation during a three-day hearing, exhausting her savings.

50. After Plaintiff's contract with Kean was not renewed, she applied for numerous other positions, including teaching positions, for which she was qualified, without success. Plaintiff believes that her failure to be hired for these positions is attributable to her having been abruptly terminated from her teaching position at Kean midway through the semester.

51. Plaintiff had a defined benefit pension. Unless she was on a leave of absence or lay-off, Plaintiff was required to find new employment with the State within two years of her last date of work. At Plaintiff's request, her attorney asked Green to write a letter indicating that she had been laid off, since Kean was insisting that she had not been terminated, but Green refused. She was therefore required to begin drawing on her pension by July 1, 2018. In so doing, Plaintiff was thereafter barred from seeking any additional employment with the State of New Jersey, which in turn has precluded her from making any additional contributions to her pension and obtaining free health care.

52. The Defendants' conduct has caused Plaintiff extreme emotional distress and the loss of pension benefits and of past and future income.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE FIRST AMENDMENT UNDER 42 U.S.C. §1983

53.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

54.     The free speech provision of the 1st Amendment of the United States Constitution applies to the States pursuant to the 14th Amendment.

55.     Plaintiff is accordingly entitled to the protection of her 1st Amendment right to freedom of speech pursuant to 42 U.S.C. §1983, which states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

56.     By filing her appeal with the Commission, conducting the adversarial proceeding before the ALJ, and appealing the ALJ's dismissal of her appeal to the Commission, Plaintiff exhausted her administrative remedies.

57.     The two-year statute of limitations which applies to actions filed pursuant 42 U.S.C. §1983 in New Jersey federal court was tolled while Plaintiff was exhausting her administrative remedies. See Freeman v. State, 347 N.J. Super. 11 (N.J. Super. App. Div. 2002); Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001). By directing Plaintiff that in order to appeal its determination that she had violated the Policy Plaintiff had to file an appeal with the Commission, Kean is equitably estopped from denying that the statute of limitations was tolled. See W.V. Pangborne Co. v. N.J. Dept. of Transportation, 116 N.J. 543 (N.J. 1989). Consequently, the two-year statute of limitations did not begin to run until November 24, 2018.

Plaintiff's lawsuit has accordingly been timely filed.

58.     The Policy is facially unconstitutional for three reasons:  (1) it is neither content nor viewpoint neutral; (2) many of its provisions are unconstitutionally vague; (3) many of its provisions are constitutionally overbroad.   The Policy is so permeated with unconsitutional provisions that it is unconstitutional in its entirety and unenforceable:

(1) It is neither content nor viewpoint neutral.  For example, the Policy states in its opening paragraph:  "Under this policy, forms of employment discrimination or harassment based upon the following protected categories are prohibited and will not be tolerated:  race, creed, color, national origin, nationality, ancestry, age, sex/gender (including pregnancy), marital status, civil union status, domestic partnership status, familial status, religion, affectional or sexual orientation, gender identity or expression, atypical hereditary cellular or blood trait, genetic information, liability for service in the Armed Forces of the United States, or disability." As noted in Saxe v. State College Area School District,  240 F.3d 200 (3d Cir. 2001), by covering categories that go well beyond those covered under Title VII, the Policy infringes on 1st Amendment rights. Moreover, the reference to "creed" is equivalent to the reference to "values" criticized in the Saxe decision. It is unconstitutional to discipline an employee for criticizing another employee's political beliefs, i.e., their creed.

Several of the provisions in the Policy violate the requirement that prohibitions be content and viewpoint neutral, e.g.:

> Treating an individual differently because of the individual's race, color, national origin or other protected category, or because an individual has the physical, cultural or linguistic characteristics of a racial, religious, or other protected category;
>
> Treating an individual differently because of marriage to, civil union to, domestic partnership with, or association with persons of a racial, religious or other protected category; or due to the

16

individual's membership in or association with an organization identified with the interests of a certain racial, religious or other protected category; or because of an individual's name, domestic partner's name, or spouse's name is associated with a certain racial, religious or other protected category;

Calling an individual by an unwanted nickname that refers to one or more of the above protected categories, or telling jokes pertaining to one or more protected categories;

Using derogatory references with regard to any of the protected categories in any communication;

All of the above prohibitions violate the 1st Amendment free speech provision. They essentially make verbally insulting a co-worker a basis for discipline, "up to and including termination of employment." While it is true that persistent, repeated verbal insults regarding some of the protected categories can be subject to discipline for creating a hostile workplace, one or two instances cannot, in of themselves, be a basis for discipline where, as in R.A.V. v. St. Paul, 505 U.S. 277 (1992), only speech that relates to the protected categories is punished, but not "fighting words" unrelated to the protected categories.

(2) Many of the provisions in the Policy are simultaneously unconstitutionally vague and overbroad. See Broadrick v. Oklahoma, 413 U.S. 601 (1973); McCauley v. University of Virgin Islands, 618 F.3d 232 (3d Cir. 2010); Dejohn v. Temple Univ., 537 F.3d 301 (3d Cir. 2008). What does it mean, for example, to "treat" someone "differently" because the individual is within one of the protected categories? How does one tell if A is treating B differently than A treats C? If A is Causcasian, B is Afro-American, and C is Caucasian, if A says "Hello" to C, but not to B, has A violated the Policy? What if A, a male, holds the door open for female C, who is wearing a crucifix, but not for female B, who is wearing a hijab, has A violated the Policy based on their different religions? The prohibition fails to give employees adequate notice of what is covered, and covers more than what could possibly be constitutionally defended.

17

The Sexual Harassment section of the Policy is likewise fatally afflicted with vagueness/overbreadth deficiencies, prohibiting "Generalized gender-based remarks and comments." If a male opines that, generally, women are smarter than men, has he violated the Policy? What if he says they are dumber, does this violate the policy, but not the former comment? The Policy prohibits "inappropriate comments about a person's clothing." If a male says to a female colleague that her dress brings out the beautiful amber in her eyes, has he violated the Policy? What if a female makes a *double entendre* remark to a male colleague about the length of his tie? Is typical flirting between genders prohibited? What female/male A finds flattering, female/male B may deem inappropriate and offensive.

(3)  The facial subjectivity of what constitutes a violation of the Policy makes it impossible to give "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and clearly "authorizes or even encourages arbitrary and discriminatory enforcement," as in this case in particular. See Hill v. Colorado, 530 U.S. 703, 732 (2000). Given the purely subjective standard of what speech might violate the Policy as well as the breadth and scope of its prohibitions it cannot be said that Policy can be deemed to be "surely valid in the vast majority of its intended applications." Brown v. City of Pittsburgh, 586 F.3d 263, 291, n.34 (3d Cir. 2009).

Indeed, the allegations against Plaintiff in this case facially demonstrate the vagueness of the Policy as well as its arbitrary enforcement. The alleged violations here involved complaints of Plaintiff "expressing negative statements about immigrants and nationality and espousing conventional gender role views regarding wormen." Whether or not someone's "statement" about something is "negative," or whether a statement "espouses" a viewpoint on a topic is a completely subjective judgment that does not provide the speaker with a reasonable opportunity

18

*a priori* to understand whether such a statement might violate the Policy because someone subjectively deems it negative or offensive. Thus, the Policy is so vague as to effectively become a weapon against free speech in violation of the 1st amendment.

59.    The unconstitutionality of the Policy was clearly established by numerous legal precedents many years before the events giving rise to this lawsuit occurred. See, e.g., R.A.V. v. St. Paul, 505 U.S. 377 (1992); Baggett v. Bullitt, 377 U.S. 360 (1964); Broadrick v. Oklahoma, 413 U.S. 601 (1973); Dejohn v. Temple Univ., 537 F.3d 301 (3d Cir. 2008); Sypniewski v. Warren Hills Regional Bd., 307 F.3d 243 (3d Cir. 2002); Saxe v. State College Area School District, 240 F.3d 200 (3d Cir. 2001); State v. Vawter, 136 N.J. 56 (1994).

60.    Since the Policy is unconstitutional, Plaintiff may not be deemed to have violated the Policy with respect to any of the alleged conduct she was accused of. A public employee cannot be held to have violated an unconstitutional statute, ordinance, regulation or policy.

61.    The determination that Plaintiff had violated the Policy was therefore itself an unconstitutional and invalid determination. In addition, any disciplinary action which was imposed on Plaintiff on the basis that she had violated the Policy was unconstitutionally imposed.

**WHEREFORE**, Plaintiff respectfully requests that the court enter judgment in favor of Plaintiff declaring the Policy unconstitutional and unenforceable and such damages provided for by law as well as reasonable attorney fees pursuant to 42 U.S.C. §1988; and grant Plaintiff such other and further relief as the court may deem just and proper.

WILLIAMS CEDAR LLC

By:      */s/ Kevin Haverty*
KEVIN HAVERTY
Attorney for Plaintiff

Dated: July 10 , 2024

19